1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  MICHAEL W. JORGENSON
   Supervising Deputy Attorney General
5  CHRISTOPHER M. YOUNG, State Bar No. 238532
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5553
    Fax:  (415) 703-5843
8   Email:  Chris.Young@doj.ca.gov

9  Attorneys for Defendants Childers, Gibbs-Battenfeld,
   Guerra, and Woodford

10

11

12                    IN THE UNITED STATES DISTRICT COURT

13                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                          SAN FRANCISCO DIVISION

15  **LENNIS L. ROBERSON,**                    CASE NO. C 07-3497 CRB (PR)

16                                Plaintiff,

17             **v.**

18  **JEANNE WOODFORD, et al.,,**

19                                Defendants.

20

21  **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

|  | Page |
|---|---|
| INTRODUCTION | 2 |
| MEMORANDUM OF POINTS AND AUTHORITIES | 2 |
|    ISSUE PRESENTED | 2 |
|    STATEMENT OF THE CASE | 2 |
|    STATEMENT OF FACTS | 3 |
|    ARGUMENT | 7 |
|       I.   LEGAL STANDARDS FOR SUMMARY JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56(c). | 7 |
|       II.  PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF IS MOOT, THEREFORE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT. | 8 |
|       III. PLAINTIFF CANNOT PRODUCE EVIDENCE THAT GROOMING VIOLATIONS WERE RELATED TO HIS RELIGIOUS BELIEFS; THUS DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT. | 9 |
|             A.  Defendants Cannot Be Liable For Burdening Religious Exercise If They Did Not Know Plaintiff's Conduct Was Based On Religious Convictions. | 9 |
|             B.  RLUIPA Does Not Have Retroactive Effect. | 11 |
|             C.  Plaintiff Did Not Argue That He Was Wrongfully Disciplined at the Administrative Level, Therefore Plaintiff Did Not Exhaust All Available Administrative Remedies. | 11 |
|       IV. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY. | 12 |
|             A.  Defendants are Entitled to Qualified Immunity Because Plaintiff Has Failed to Show Defendants' Actions Violated a Constitutional Right. | 14 |
|             B.  Defendants Are Entitled to Qualified Immunity Because It Would Not Have Been Clear to a Reasonable Official in Defendants' Positions that Their Conduct Was Unlawful in the Specific Factual Situation They Confronted. | 14 |
| CONCLUSION | 15 |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Anderson v. Creighton*
483 U.S. 635 (1987) ............................................................................... 12, 13

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) .................................................................................... 7, 8

*Behrens v. Pelletier*
516 U.S. 299 (1996) ......................................................................................... 12

*Cantrell v. City of Long Beach*
241 F.3d 674 (9th Cir. 2001) ............................................................................ 8

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) .................................................................................... 7, 11

*Cutter v. Wilkinson*
544 U.S. 709 n.12 (2005) ................................................................................ 12

*Davis v. Scherer*
468 U.S. 183 (1984) .................................................................................... 12, 13

*Defunis v. Odegaard*
416 U.S. 312 (1974) (Per Curiam) ................................................................... 8

*Dittman v. California*
191 F.3d 1020 (9th Cir. 1999) ........................................................................ 14

*Freeman v. Arpaio*
125 F.3d 732 (9th Cir. 1997) ..................................................................... 9, 14

*H.C. v. Koppel*
203 F.3d 610 (9th Cir. 2000) ........................................................................... 8

*Hall v. Beals*
396 U.S. 45 (1969) ............................................................................................ 8

*Harlow v. Fitzgerald*
457 U.S. 800 (1982) .................................................................................... 12, 13

*Hope v. Pelzer*
536 U.S. 730 (2002) ........................................................................................ 15

*Kelley v. Borg*
60 F.3d 664 (9th Cir. 1995) ........................................................................... 13

*Landgraf v. USI Film Products*
511 U.S. 244 (1994) ........................................................................................ 11

Defs.' Not. Mot. & Mot. Summ. J.

*Roberson v. Woodford, et al*
Case No. C 07-3497 CRB (PR)

# TABLE OF AUTHORITIES (continued)

| | Page |
|---|---|
| *Malley v. Briggs*<br>475 U.S. 335 (1986) | 13, 14 |
| *Martin v. City of Oceanside*<br>360 F.3d 1078 (9th Cir. 2004) | 13 |
| *Mitchell v. Forsyth*<br>472 U.S. 511 (1985) | 13 |
| *Nelson v. Heiss*<br>271 F.3d 891 (9th Cir. 2001) | 14 |
| *Orin v. Barclay*<br>272 F.3d 1207 (9th Cir. 2001) | 13 |
| *Romero v. Kitsap County*<br>931 F.2d 624 (9th Cir. 1991) | 13 |
| *Ruffin v. County of Los Angeles*<br>607 F.2d 1276 (9th Cir. 1979) | 8 |
| *Ruiz v. City of Santa Maria*<br>160 F.3d 543 (9th Cir. 1998) (Per Curiam) | 8 |
| *Sample v. Johnson*<br>771 F.2d 1335 (9th Cir. 1985) | 8 |
| *San Lazaro Ass'n, Inc. v. Connell*<br>286 F.3d 1088 (9th Cir. 2002) | 8 |
| *Saucier v. Katz*<br>533 U.S. 194 (2001) | 12-15 |
| *Steckl v. Motorola, Inc.*<br>703 F.2d 392 (9th Cir. 1983) | 8 |
| *Warsoldier v. Woodford*<br>418 F.3d 989 (9th Cir. 2005) | 9 |
| *Wilson v. Layne*<br>526 U.S. 603 (1999) | 13 |

**Constitutional Provisions**

| | |
|---|---|
| United States Constitution | |
|     First Amendment | 5, 14 |
|     Fourteenth Amendment | 3, 14 |

TABLE OF AUTHORITIES  (continued)

1

2

3                                                                                        Page

4      **Statutes**

5      United States Code, Title 28
           § 1915(a)                                                                        3

6      United States Code, Title 42
           § 1983                                                                        2, 12
7          § 1997e(a)                                                                      12
           § 2000cc-1                                                                2, *passim*
8          § 2000cc-1a                                                                       9

9      **Court Rules**

10     Federal Rules of Civil Procedure
           rule 56                                                                        1, 3
11         rule 56(c)                                                                        7

12     **Other Authorities**

13     Cal. Code Regs. Title 15
           § 3044(b)(5)                                                                      4
14         § 3060-62                                                                   6, 8, 15

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defs.' Not. Mot. & Mot. Summ. J.                          *Roberson v. Woodford, et al*
                                                          Case No. C 07-3497 CRB (PR)

                                            iv

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  MICHAEL W. JORGENSON
   Supervising Deputy Attorney General
5  CHRISTOPHER M. YOUNG, State Bar No. 238532
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5553
     Fax:  (415) 703-5843
8    Email:  Chris.Young@doj.ca.gov

9  Attorneys for Defendants Childers, Gibbs-Battenfeld,
   Guerra, and Woodford

10

11                    IN THE UNITED STATES DISTRICT COURT

12                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                          SAN FRANCISCO DIVISION

14

15 | **LENNIS L. ROBERSON,** | CASE NO. C 07-3497 CRB (PR) |

16 |                                    Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |

17 |          v. | |

18 | **JEANNE WOODFORD, et al.,,** | |

19 |                                    Defendants. | |

20

21     TO PLAINTIFF LENNIS ROBERSON, IN PRO PER:

22     PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 56, Defendants Childers, Gibbs-

23  Battenfeld, Guerra, and Woodford will move this Court for summary judgment on the grounds

24  that there is no genuine issue as to any material fact and that they are entitled to judgment as a

25  matter of law.

26     This motion is based on this notice of motion and motion, the accompanying memorandum

27  of points and authorities, supporting declarations, all pleadings, exhibits, and papers on file in

28  this action, and any other matters properly before the Court.

Defs.' Not. Mot. & Mot. Summ. J.                                          *Roberson v. Woodford, et al*
                                                                          Case No. C 07-3497 CRB (PR)

1

**INTRODUCTION**

Plaintiff Lennis Roberson (Plaintiff) is an inmate at the Correctional Training Facility, Soledad.  Plaintiff received grooming standard violations in 1998 and was deemed a "program failure," therefore he was ineligible to receive behavioral credit.  Plaintiff filed suit under 42 U.S.C. § 1983 and RLUIPA seeking damages, restoration of credit, and injunctive relief.

At the disciplinary hearings on the grooming standard violations, Plaintiff did not inform prison officials that he was noncompliant because of his religious convictions.  Nor did Plaintiff file any inmate appeals challenging the regulation.  Instead, Plaintiff waited seven years to file an inmate appeal.  Just before Plaintiff filed the appeal, new regulations and policies were enacted entitling inmates to credit restoration if they could prove they received a grooming standard violation based upon religious convictions.

Plaintiff cannot show that prison officials enforced the grooming standard in violation of his rights under the First and Fourteenth Amendments and RLUIPA.  Therefore, Defendants are entitled to judgment as a matter of law.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**ISSUE PRESENTED**

In 2006, California prisons adopted grooming standards allowing long hair and beards, and offered to restore credits to some inmates who had been found guilty of grooming standard violations on religious grounds.  Plaintiff was found guilty of grooming violations in 1998, and did not inform officials his acts were  part of his Muslim faith.  Can Plaintiff sue officials for burdening his religious exercise?

**STATEMENT OF THE CASE**

Plaintiff Lennis Roberson (Plaintiff) is currently a state inmate incarcerated at the Correctional Training Facility, Soledad (Soledad).  On July 5, 2007, Plaintiff filed this civil rights suit under 42 U.S.C. § 1983.  (Court Docket No. (CD) 1.)  The claims in Plaintiff's Complaint are based upon the conditions of his confinement at Soledad.  (Compl. 3.)

Plaintiff's Complaint alleges that Defendants Childers, Gibbs-Battenfeld, Guerra, and

Defs.' Not. Mot. & Mot. Summ. J.                                                   *Roberson v. Woodford, et al*
                                                                                   Case No. C 07-3497 CRB (PR)

1    Woodford[1/] (Defendants) violated Plaintiff's right to the free exercise of his religion under the

2    First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), as

3    well as Plaintiff's right to equal protection under the Fourteenth Amendment. (*Id.* at 24-26.)

4    Plaintiff is seeking time credit restoration for grooming standard violations he received in 1998,

5    damages, and an injunction to rectify alleged constitutional violations. (*Id.* at 27-28.) Plaintiff's

6    claims against Defendants are based solely on Defendants' alleged acts and omissions for events

7    occurring at Soledad. (Compl. 3.)

8        In accordance with 28 U.S.C. § 1915(a), this Court screened Plaintiff's Complaint, finding

9    each of Plaintiff's claims cognizable. (Order of Service 2.) The Court ordered that, by February

10   13, 2008, Defendants file a summary-judgment motion or other dispositive motion on the claims

11   found cognizable by the Court. (Order of Service 3.) Defendants now submit this motion for

12   summary judgment under Rule 56 because there is no genuine issue of material fact, and

13   Defendants are entitled to judgment as a matter of law.

14                          **STATEMENT OF FACTS**

15       1.    Plaintiff is a state inmate serving a sentence of 48 years for rape, lewd and lascivious

16   conduct with a child, procurement, kidnaping, and pimping. (Decl. Young Supporting Defs.'

17   Mot. Summ. J. (Decl. Young) Ex. B at 2.) In his probation report prepared in 1986, Plaintiff

18   stated that he attended the Church of Living God as a child, but that as an adult he had no

19   religious affiliation. (*Id.* Ex. C at 10.)

20       2.    On September 24, 1998, Plaintiff appeared at a Unit Classification Committee at

21   California State Prison, Corcoran, for a classification review. (Decl. Young, Ex. D at 23.)

22   Among other issues, Plaintiff was advised of the institution's grooming standards. (*Id.*)

23       3.    Two months later, on November 20, Plaintiff received a CDC-128A authored by

24   Correctional Officer Rangel. (Decl. Young, Ex. E at 29.) Plaintiff was advised that he was not in

25   compliance with institutional grooming standards, and that if he did not comply with grooming

26   _____

27       1. Plaintiff also names Defendants Kane, Wiggins, Childress, Sumlin, and Navarro. To the
     best knowledge of the Attorney General's Office, these Defendants have not been served in this suit,
28   and no appearance is made on their behalf.

Defs.' Not. Mot. & Mot. Summ. J.                                    *Roberson v. Woodford, et al*
                                                                    Case No. C 07-3497 CRB (PR)

3

1  regulations that day, he would receive an administrative Rules Violation Report. (*Id.*) Plaintiff

2  was also given a deadline of November 23 before he would receive a serious Rules Violation

3  Report, and a deadline of November 26 before he would be subject to a classification review and

4  possible assignment of C-status. (*Id.*) "C-status" is the work group assignment for inmates who

5  are deemed "program failures." Cal. Code Regs. tit. 15, § 3044(b)(5). Inmates assigned C-status

6  do not accumulate any credit towards early release. (*Id.*)

7      4.    On November 25, 1998, Plaintiff received a CDC 115 administrative Rules Violation

8  Report (RVR) log number 3C-98-11-37, for failure to adhere to grooming standards. (Compl. ¶

9  16, Ex. A.)

10     5.    On December 1, 1998, Plaintiff received a second RVR, log number 3C-98-12-01, for

11 failure to adhere to grooming standards. (*Id.* ¶ 17, Ex. B.)

12     6.    A hearing was held on December 8 before Correctional Sergeant Rabe on both RVR

13 3C-98-11-37 and RVR 3C-98-12-01. (*Id.* Exs. A & B.) Plaintiff entered no plea, and the hearing

14 officer entered a not guilty plea on Plaintiff's behalf. (*Id.*) Plaintiff was given the opportunity to

15 address the charges, and stated "it doesn't matter." (*Id.*) Plaintiff did not tell the hearing officer

16 that he was non-compliant with the grooming standards based upon his religious beliefs.

17     7.    On December 6, 1998, Plaintiff received a third RVR for failure to adhere to grooming

18 standards, log number 3C-98-12-10. (Compl. ¶ 19, Ex. C.) When given the opportunity to

19 address the charge on December 30 at the hearing, Plaintiff stated "I don't care to address that."

20     8.    On December 8, 1998, Plaintiff received a fourth RVR for failure to adhere to

21 grooming standards, log number 3C-98-12-18. (Compl. ¶ 20, Ex. D.) Plaintiff later filed an

22 inmate appeal to have this RVR removed from his Central File. (Compl. Ex. E.) Plaintiff's

23 request was granted because the issuance of this RVR violated the "stacking rule" in that Plaintiff

24 had already been cited for the behavior. (Compl. ¶ 27, Ex. E.) In the inmate appeal, Plaintiff did

25 not assert that he failed to comply with grooming regulations based upon his religious beliefs.

26 (*See* Ex. E.)

27     9.    On January 7, 1999, Plaintiff appeared before the Unit Classification Committee.

28 (Decl. Young Ex. D at 25.) The committee assigned Plaintiff to C-status based upon Plaintiff's

Defs.' Not. Mot. & Mot. Summ. J.

*Roberson v. Woodford, et al*
Case No. C 07-3497 CRB (PR)

1  grooming violations. (*Id.*) Plaintiff's appeal rights were explained at the committee. (*Id.*)

2  Plaintiff did not appeal the C-status assignment on any grounds, religious or otherwise.

3      10. On February 3, 1999, Plaintiff was transferred from Corcoran to the Correctional

4  Training Facility, Soledad (Soledad). (Decl. Young Ex. F.) At Plaintiff's initial classification

5  committee a week later, the committee asked Plaintiff if he would conform to the grooming

6  standards, to which he simply responded "no." (*Id.* Ex. D at 26.)

7      11. Over six years later, on August 10, 2005, Plaintiff requested to be removed from Work

8  Group C by sending a request to Correctional Counselor Carnazzo. (Compl ¶ 39; Compl. Ex. G.)

9  Plaintiff requested removal from C-status because "the U.S. Supreme Court decided that

10  RLUIPA's institutionalized person provision is consistent with the First Amendment." (*Id.* Ex.

11  G.) Plaintiff did not assert in this request that his grooming was related to religious beliefs. (*See*

12  *id.*) An inmate may request to be removed from C-status by written request. Cal. Code Regs. tit.

13  15 § 3044(b)(5). Plaintiff's request to Carnazzo was returned to Plaintiff, instructing him to

14  contact Defendant Gibbs regarding his request. (Compl. Ex. G.)

15      12. Plaintiff was scheduled for a classification review on October 18, 2005, but refused to

16  attend. (Decl. Young Ex. D at 24.) Plaintiff refused to attend classification committees until

17  inmate appeal 06-334 was decided. (*Id.* at 28.) At a special committee review, Plaintiff's

18  custody status was not changed as a result of his refusal to appear. (*Id.*)

19      13. Plaintiff submitted a CDC 602 inmate appeal on October 20, 2005, log number 06-334,

20  relating to his unanswered request for an interview and removal of C-status. (Compl. Ex. H.)

21  Plaintiff contended that he should be removed from C-status because of a decision of the

22  Supreme Court invalidated grooming standards. (*Id.*) Defendant Gibbs responded at the

23  informal level of review on January 3, 2006, noting that Plaintiff was placed on C-status in 1999

24  when he was determined a program failure, and that he was not in compliance with grooming

25  standards as of that date. (*Id.*; Decl. Gibbs-Battenfeld Supporting Defs.' Mot. Summ. J. (Decl.

26  Gibbs-Battenfeld) ¶ 4.) Plaintiff did not state in appeal log number 06-334, or personally to

27  Defendant Gibbs-Battenfeld, that his noncompliance with grooming standards was based on his

28  personal religious beliefs. (Decl. Gibbs-Battenfeld ¶ 4.)

14.   On Feburary 1, 2006, Plaintiff filed an "emergency appeal." (Compl. Ex. J.)  The

appeal was filed on behalf of Plaintiff and fellow inmate McCall. (*Id.*)  Plaintiff attached

proposed regulations changing inmate grooming standards, a letter from the Attorney General's

Office addressed to another inmate, and proof that McCall violated grooming standards based

upon religious beliefs. (*Id.*)  Plaintiff did not attach any proof that his violation of grooming

standards was based on his religious beliefs. (*Id.*)

15.   On January 17, 2006, the CDCR adopted emergency regulation relating to grooming.

Cal. Code Regs. tit. 15, § 3062.   The emergency regulation allowed inmates to have any length

of hair, as long as the inmate's hair did not cover his face or pose a health/safety risk.

*Id.* § 3062(e).  Further, the new regulation allowed inmates to wear short beards. *Id.* § 3062(h).

On September 22, 2000, the Religious Land Use and Institutionalized Persons Act (RLUIPA)

was enacted.  42 U.S.C. § 2000cc-1.

16.   On February 27, 2006, Director Dovey addressed a memo to the Wardens of all CDCR

institutions explaining the January 17 emergency regulation. (Decl. Young Ex. G.)  Director

Dovey ordered that any grooming standards RVR written after January 17, 2006, would be

voided upon written request of the inmate, as long as the inmate's appearance complied with the

revised grooming standard described in the emergency regulation. (*Id.*)  Director Dovey also

ordered that any inmate deemed a program failure due to grooming violations should be removed

from program failure status effective January 17, 2006. (*Id.*)  Finally, Director Dovey instructed

that any inmate who had been found guilty of an RVR based on grooming standards, and who

violated the standard "based on previously stated religious beliefs" would receive full restoration

of credits lost for violations occurring on or after September 22, 2000, the day that RLUIPA was

passed. (*Id.*)  Credit restoration would be granted if an inmate had a guilty RVR following the

enactment of RLUIPA, and if that inmate could prove that noncompliance was based upon

religious beliefs. (*Id.*)  Proof of noncompliance based on religious beliefs could include:

documented statements at a disciplinary hearing, investigative employee reports, inmate appeals,

classification chronologicals, other documents in the inmate's central file, or any other verifiable

document. (*Id.*)  Inmates who could not verify their decision to violate the grooming standards

1    based on religious beliefs were not entitled to have their credit restored. (*Id.*)

2        17.  At Soledad, special reviews were conducted for inmates on C-status due to grooming

3    violations, in accordance with new departmental regulations. (Decl. Gibbs-Battenfeld ¶ 7.)  On

4    February 15, 2006, Plaintiff appeared at the Unit Classification Committee where his C-status

5    was removed effective January 17, 2006. (Compl. Ex. K; Decl. Gibbs-Battenfeld ¶¶ 5, 8.)  There

6    was no proof that Plaintiff was assigned to C-status for exercising his religious beliefs, other than

7    Plaintiff's statements at the February 15 committee. (Decl. Battenfeld ¶ 8.)  Plaintiff was

8    assigned to work group A-2, privilege group B, and was placed on waiting lists for a work

9    assignment. (*Id.* ¶ 5.)  Plaintiff disagreed with the committee decision, stating that he should be

10   placed on a more favorable work group and privilege group because of religious reasons. (*Id.* ¶

11   6.)  Plaintiff was advised of his right to appeal the committee action. (*Id.*)

12       18.  On March 7, 2006, Plaintiff submitted inmate appeal log number 06-1218 requesting

13   credit restoration for the period of January 1999-2006. (Compl. Ex. K.)  Plaintiff's appeal was

14   denied at the Director's Level of Review because, according to institutional policy, credit

15   restoration would be extended to inmates who received disciplinary violations on or after

16   September 22, 2000. (*Id.*)  Plaintiff's disciplinary violations date from 1998. (*Id.*; Compl. Exs.

17   A-D.)

18                                    **ARGUMENT**

19                                          **I.**

20   **LEGAL STANDARDS FOR SUMMARY JUDGMENT UNDER FEDERAL RULE**
     **OF CIVIL PROCEDURE 56(c).**
21

22       Summary judgment is appropriate "where there is no genuine issue as to any material fact,

23   and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts

24   are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

25   248 (1986).  The party moving for summary judgment bears the initial burden of identifying

26   those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a

27   genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the

28   moving party meets its initial burden, entry of summary judgment is mandated where the

Defs.' Not. Mot. & Mot. Summ. J.                                    *Roberson v. Woodford, et al*
                                                                    Case No. C 07-3497 CRB (PR)

1    nonmoving party fails to "set forth specific facts showing that there remains a genuine issue for

2    trial" and evidence "significantly probative as to any [material] fact claimed to be disputed."

3    *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983), *citing Ruffin v. County of Los*

4    *Angeles*, 607 F.2d 1276, 1280 (9th Cir. 1979). If the evidence presented by the nonmoving party

5    is "merely colorable, or is not sufficiently probative, summary judgment may be granted."

6    *Anderson*, 477 U.S. at 249-50. There is no triable issue of fact unless the nonmoving party

7    submits sufficient evidence for a jury to return a verdict in the nonmoving party's favor. *Id.* at

8    250.

9                                            **II.**

10   **PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF IS MOOT,**
     **THEREFORE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT.**

11

12       An issue becomes moot when it "loses its quality as a 'present, live controversy'" and when

13   "[a] determination . . . of the legal issues tendered by the parties is no longer necessary to compel

14   . . . and could not serve to prevent" the action from which one party seeks relief. *See Defunis v.*

15   *Odegaard*, 416 U.S. 312, 317 (1974) (Per Curiam); *San Lazaro Ass'n, Inc. v. Connell*, 286 F.3d

16   1088, 1095 (9th Cir. 2002) (*quoting Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir.

17   2001)). A "live controversy" requires an "actual, ongoing dispute." *See Ruiz v. City of Santa*

18   *Maria*, 160 F.3d 543, 548-49 (9th Cir. 1998) (Per Curiam). The actual dispute must be extant at

19   all stages of review. *See H.C. v. Koppel*, 203 F.3d 610, 611 (9th Cir. 2000). A court shall not

20   hear a moot issue "to avoid advisory opinions on abstract propositions of law." *See Cantrell v.*

21   *City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001) (*quoting Hall v. Beals*, 396 U.S. 45, 48

22   (1969)); *see also Sample v. Johnson*, 771 F.2d 1335, 1338 (9th Cir. 1985) (holding that federal

23   courts lack jurisdiction to decide moot issue).

24       Here, Plaintiff requests that the Court grant an injunction "to afford plaintiff the rights to

25   which he is entitled." (Compl. 27.) Grooming standards for all California inmates were revised

26   in 2006, allowing inmates to wear their hair at any length and to grow beards. Cal. Code Regs.

27   tit. 15, § 3062. Therefore, a present, live controversy does not exist in this action in connection

28   with Plaintiff's claim for injunctive relief, entitling Defendants to summary judgment.

Defs.' Not. Mot. & Mot. Summ. J.                                 *Roberson v. Woodford, et al*
                                                                 Case No. C 07-3497 CRB (PR)

8

## III.

**PLAINTIFF CANNOT PRODUCE EVIDENCE THAT GROOMING VIOLATIONS WERE RELATED TO HIS RELIGIOUS BELIEFS; THUS DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT.**

**A.  Defendants Cannot Be Liable For Burdening Religious Exercise If They Did Not Know Plaintiff's Conduct Was Based On Religious Convictions.**

Prison officials may not burden the practice of a prisoner's religion by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests. *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997).  To reach the level of a constitutional violation, "the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." *Id.* at 737.  A prisoner may be inconvenienced in the practice of his or her faith so long as the governmental conduct does not prohibit the prisoner from "participating in the mandates of his religion." *Id.*  Also, under RLUIPA, prison officials may not burden an inmate's religious exercise, even if the burden results from a rule of general applicability, unless the prison demonstrates a compelling governmental interest and that the burden is the least restrictive means of furthering that compelling governmental interest.  42 U.S.C. § 2000cc-1a.

The Ninth Circuit has held that under RLUIPA "punishments to coerce a religious adherent to forgo her or his religious beliefs is an infringement on religious exercise." *Warsoldier v. Woodford*, 418 F.3d 989, 996 (9th Cir. 2005).  In *Warsoldier*, the inmate asserted at disciplinary hearings that his religious beliefs prevented him from complying with grooming policy. *Id.* at 991.  Even after prison officials were on notice that the inmate's noncompliance with grooming regulations was based on his religious convictions, the prison punished the inmate. *Id.*  Under *Warsoldier*, the Plaintiff has the initial burden of establishing "the prima facie existence of . . . a substantial burden" on his religious exercise. *Id.* at 995.  An inmate's religious exercise is substantially burdened "'where the state . . . denies [an important benefit] *because of conduct mandated by religious belief*, thereby putting substantial pressure on an adherent to modify his behavior and to violate his belief.'" *Id.* (emphasis added.)

Defs.' Not. Mot. & Mot. Summ. J.

*Roberson v. Woodford, et al*
Case No. C 07-3497 CRB (PR)

1    Here, there is no indication that Plaintiff ever informed prison officials that his religion

2  prevented him from complying with the grooming policy until 2006, *after* learning that inmates

3  would be entitled to restoration of credits if they violated grooming policies as a tenet of their

4  religion. (St. Facts ¶ 14.) Plaintiff has no evidence that prison officials knew, at either Corcoran

5  or Soledad, that Plaintiff was a practicing Muslim and could not comply with grooming

6  regulations based on his faith. After Plaintiff's transfer to Soledad, the initial classification

7  committee reviewed Plaintiff's prison files, and asked Plaintiff if he would comply with

8  grooming regulations. (St. Facts ¶ 10.) Plaintiff simply responded: "no." (*Id.*) The disciplinary

9  history reviewed by the committee did not contain any indication that Plaintiff violated grooming

10  policies based on religious beliefs. (*Id.* ¶¶ 6-9, 17.)

11    Plaintiff first requested that his classification be adjusted in August 2005. (*Id.* ¶ 11.)

12  Plaintiff filed an inmate appeal, log number 06-334, requesting that he be removed from C-

13  status. (*Id.* ¶ 13.) Defendant Gibbs-Battenfeld was Plaintiff's counselor at the time, and was not

14  aware that Plaintiff's noncompliance with grooming standards was based on religious reasons.

15  (*Id.*) Nor did Plaintiff inform prison officials through the administrative grievance process or at

16  classification committees that he was Muslim. (*Id.* ¶¶ 12-13.)

17    Plaintiff did not raise the issue of a religious conflict until February 1, 2006, when

18  Plaintiff filed an administrative grievance stating that prison officials were punishing him for

19  exercising "religious beliefs." (*Id.* ¶ 14.) Plaintiff attached the new grooming regulations to this

20  appeal, and a letter from the Attorney General's Office addressed to another inmate, as proof that

21  grooming regulations could not be enforced when an inmate's religious convictions are in

22  conflict. (Compl. Ex. J.) At a classification hearing on February 15, Plaintiff's C-status was

23  removed effective January 17, 2006. (St. Facts ¶ 17.) Plaintiff's statements at the committee

24  were the only proof that Plaintiff's noncompliance with the grooming policy was based on

25  religious beliefs. (*Id.*)

26    Plaintiff cannot produce evidence that prison officials were aware that Plaintiff was in

27  violation of grooming standards based upon his religious convictions, thus Plaintiff fails to

28  demonstrate that there is a genuine issue whether Defendants substantially burdened the practice

Defs.' Not. Mot. & Mot. Summ. J.                                    *Roberson v. Woodford, et al*
                                                                   Case No. C 07-3497 CRB (PR)

1    of his religion. *See Celotex*, 477 U.S. at 322-23. Plaintiff did not assert religion as the basis for

2    his refusal to comply with grooming regulations until after the CDCR amended grooming

3    regulations in 2006. (St. Facts ¶¶ 14-15.) Since Plaintiff cannot prove that Defendants

4    substantially burdened his religious exercise, there is no genuine issue of material fact for trial,

5    and Defendants are entitled to summary judgment.

6    **B.    RLUIPA Does Not Have Retroactive Effect.**

7         RLUIPA was enacted on September 22, 2000, over a year after Plaintiff was found guilty

8    of grooming standard violations. (St. Fact ¶¶ 6-7, 15.)

9         RLUIPA is silent whether it applies retroactively. "If there is no congressional directive

10   on the temporal reach of a statute, we determine whether the application of the statute to the

11   conduct at issue would result in a retroactive effect. If so, then in keeping with our 'traditional

12   presumption' against retroactivity, we presume that the statute does not apply to that conduct."

13   *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994). Here, applying RLUIPA to

14   Plaintiff's disciplinary violations in 1998 would result in a retroactive effect. Therefore, the

15   presumption is that RLUIPA does not apply to Plaintiff's grooming violations.

16   **C.    Plaintiff Did Not Argue That He Was Wrongfully Disciplined at the Administrative**
         **Level, Therefore Plaintiff Did Not Exhaust All Available Administrative Remedies.**

17

18        Plaintiff alleges that Defendants burdened Plaintiff's religious practice "by denying

19   Plaintiff good time credits for adhering to religious beliefs." (Compl. 24.) Plaintiff claims that

20   he was pressured to shave his beard to comply with grooming standards, even though shaving his

21   beard would violate Plaintiff's religion. (*Id.* 25.) However, at the time Plaintiff was disciplined

22   for not shaving in 1998, he did not state that complying with regulations would violate his

23   religious beliefs. Instead, he stated "it doesn't matter" and "I don't care to address that." (St.

24   Facts ¶¶ 6-7.) Plaintiff filed an inmate appeal challenging one out of the four grooming

25   violations he received in December 1998. (*Id.* ¶ 8.) In that appeal, Plaintiff never asserted that

26   his faith mandated that he not shave, and that he should not be disciplined for that reason. (*Id.*)

27        In fact, Plaintiff never appealed the grooming disciplinary action at Corcoran or Soledad.

28   (*Id.* ¶¶ 4-8, 13-14.) Instead, seven years later, Plaintiff appealed his placement on C-status. (*Id.* ¶

Defs.' Not. Mot. & Mot. Summ. J.                                    *Roberson v. Woodford, et al*
                                                                     Case No. C 07-3497 CRB (PR)

11

1    13.) Finally, Plaintiff appealed the issue of whether he was entitled to restoration of behavioral

2    credits based on his religious beliefs. (*Id.* ¶ 18.) By that time, the CDCR adopted a policy to

3    restore behavioral credit to inmates who had asserted religion as the basis for their violation of

4    grooming standards. (*Id.* ¶¶ 15-16.)

5         A prisoner may not sue under RLUIPA without first exhausting administrative remedies.

6    *Cutter v. Wilkinson*, 544 U.S. 709, 723 n.12 (2005). Further, nothing in RLUIPA "shall be

7    construed to amend or repeal the Prison Litigation Reform Act of 1995 (PLRA)." *Id.* The PLRA

8    states that "no action shall be brought with respect to prison conditions under [42 U.S.C. § 1983],

9    or any other Federal Law, by a [confined prisoner] until such administrative remedies as are

10    available are exhausted." 42 U.S.C. § 1997e(a). Plaintiff does not allege that prison officials

11    wrongfully disciplined him for not shaving his beard, nor could he, because he never pursued

12    administrative remedies for that claim.

13         Instead, Plaintiff's inmate appeal log number 06-1218 and his Complaint focus on the

14    fact that prison officials did not restore behavioral credits in 2006. (Compl. 24-26.) As shown

15    above, Plaintiff was not entitled to restoration of behavioral credits. Therefore, Defendants are

16    entitled to summary judgment.

17                                        **IV.**

18         **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

19         Qualified immunity "'shield[s] [government agents] from liability for civil damages

20    insofar as their conduct does not violate clearly established statutory or constitutional rights of

21    which a reasonable person would have known.'" *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996)

22    (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The general rule of qualified

23    immunity is intended to provide government officials with the ability to 'reasonably anticipate'

24    when their conduct may give rise to liability for damages.'" *Anderson v. Creighton*, 483 U.S.

25    635, 646 (1987) (citing *Davis v. Scherer*, 468 U.S. 183, 195 (1984)). A ruling on a qualified

26    immunity claim should be made "at the earliest possible stage in litigation" "so that the costs and

27    expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194,

28    200 (2001) (citation omitted). Qualified immunity is particularly amenable to summary

1   judgment adjudication. *Martin v. City of Oceanside*, 360 F.3d 1078, 1081 (9th Cir. 2004).

2   Under the qualified immunity analysis clarified by the Supreme Court in *Saucier*, Defendants are

3   immune from liability in this case.

4       Under *Saucier*, the trial court must first ask whether a constitutional right would have

5   been violated on the facts alleged. *Id.* at 201. "If no constitutional right would have been

6   violated were the allegations established, there is no necessity for further inquiries concerning

7   qualified immunity." *Saucier*, 533 U.S. at 201.

8       Second, assuming a constitutional violation is alleged, the question remains whether the

9   right was clearly established under the particular circumstances faced by the defendants. *Id.* The

10  contours of the clearly established right "must be sufficiently clear that a reasonable official

11  would understand that what he is doing violates that right." *Id.* (citing *Anderson v. Creighton*,

12  483 U.S. at 640). Thus, the relevant, dispositive inquiry in determining whether a right is clearly

13  established is whether it would be clear to a reasonable officer that his conduct was unlawful in

14  the specific factual situation he confronted. *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 615

15  (1999)); *see Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995). Plaintiff bears the burden of

16  proving the law was clearly established. *Davis v. Scherer*, 468 U.S. 183, 197 (1984). For the

17  right at issue to have been clearly established, it must have been clear to a reasonable officer that

18  his conduct was unlawful at the time. *Anderson*, 483 U.S. 635, 640; *Orin v. Barclay*, 272 F.3d

19  1207, 1214 (9th Cir. 2001). "Therefore, regardless of whether the constitutional violation

20  occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly

21  established' or the [official] could have reasonably believed that his particular conduct was

22  lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

23      The Supreme Court has repeatedly ruled that governmental officials are entitled to

24  immunity unless "the law clearly proscribed the actions" which they took. *Mitchell v. Forsyth*,

25  472 U.S. 511, 528 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Malley v. Briggs*, 475

26  U.S. 335, 341 (1986). The qualified immunity standard established by the Supreme Court leaves

27  ample room for government officials, acting in good faith in the performance of their

28  discretionary duties, to make mistakes. *Harlow*, 457 U.S. at 800. Qualified immunity protects

Defs.' Not. Mot. & Mot. Summ. J.

1   "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. 335,

2   341.  Additionally, government officials are generally entitled to qualified immunity when acting

3   in reliance on a statute or ordinance. *Dittman v. California*, 191 F.3d 1020 (9th Cir. 1999);

4   *Nelson v. Heiss*, 271 F.3d 891 (9th Cir. 2001).

5   **A.    Defendants are Entitled to Qualified Immunity Because Plaintiff Has**
       **Failed to Show Defendants' Actions Violated a Constitutional Right.**

6

7         The first step under *Saucier* is to determine whether, taken in the light most favorable to

8   the party asserting the inquiry, the facts alleged show the defendant's conduct violated a

9   constitutional right. *Saucier,* 533 U.S. at 201.  As stated above, Plaintiff has not shown that his

10  rights under the First Amendment, Fourteenth Amendment, and RLUIPA were violated.  In order

11  to show that Defendants caused a constitutional violation, Plaintiff would have to show that

12  Defendants burdened Plaintiff's practice of his religion by preventing him from engaging in

13  conduct mandated by his faith. *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997).  Here,

14  there is no evidence that Plaintiff informed prison officials that his grooming violations were

15  based on religious beliefs.  At the disciplinary hearings, Plaintiff stated "it doesn't matter," and "I

16  don't care to address that," when he had the opportunity to assert legitimate reasons for his

17  noncompliance with grooming policies. (St. Facts ¶¶ 6-7.)  Further, Plaintiff did not file an

18  inmate appeal on the issue until departmental regulations changed and inmates were offered

19  credit restoration if they could prove their violations were due to religious reasons. (*Id.* 15-16,

20  18.)  Therefore, Defendants are entitled to qualified immunity, and the Court does not need to

21  proceed with the second prong of *Saucier*. *Saucier*, 533 U.S. at 201.

22  **B.    Defendants Are Entitled to Qualified Immunity Because It Would Not Have Been**
       **Clear to a Reasonable Official in Defendants' Positions that Their Conduct Was**
       **Unlawful in the Specific Factual Situation They Confronted.**

23

24         Assuming for the sake of argument that Defendants' actions are found to be

25  unconstitutional, it would not have been clear to a reasonable official that such conduct was

26  unlawful in the situation confronted.

27         In determining whether Defendants violated clearly established law, the "salient

28  question" is whether the state of the law at the time provided "fair warning" that their conduct

Defs.' Not. Mot. & Mot. Summ. J.                                        *Roberson v. Woodford, et al*
                                                                        Case No. C 07-3497 CRB (PR)

1    was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 740 (2002). The question must focus on

2    "what the officer reasonably understood his powers and responsibilities to be, when he acted,

3    under clearly established standards." *Saucier*, 533 U.S. at 208.

4        Prison officials are authorized to require grooming standards for the health and safety of

5    the institution. Cal. Code Regs. tit. 15 §§ 3060-62. Further, Plaintiff did not inform prison

6    officials that he was violating grooming regulations based upon his professed Muslim faith.

7    Therefore, it would not have been clear to a reasonable official that Plaintiff was exercising his

8    religious convictions.

9        Finally, as soon as the CDCR promulgated regulations in accordance with RLUIPA,

10    prison officials at Soledad began to review cases of inmates who had been charged with a

11    disciplinary violation based on grooming. (St. Facts ¶ 17.)

12        Thus, it would not have been clear to a reasonable official that the conduct at issue was

13    unlawful in the situation confronted, if in fact it was, and Defendants are entitled to qualified

14    immunity.

15                                    **CONCLUSION**

16        Plaintiff has not presented a genuine issue of fact for trial. Therefore, Defendants

17    respectfully request that this Court grant judgment in their favor and request that the Court grant

18    ///

19    ///

20    ///

21    ///

22    ///

23

24

25

26

27

28

Defs.' Not. Mot. & Mot. Summ. J.                                *Roberson v. Woodford, et al*
                                                                 Case No. C 07-3497 CRB (PR)

1  their motion for qualified immunity.

2

3      Dated:  February 13, 2008

4                          Respectfully submitted,

5                          EDMUND G. BROWN JR.
                           Attorney General of the State of California

6                          DAVID S. CHANEY
                           Chief Assistant Attorney General
7
                           FRANCES T. GRUNDER
8                          Senior Assistant Attorney General

9                          MICHAEL W. JORGENSON
                           Supervising Deputy Attorney General

10

11

12

13                         CHRISTOPHER M. YOUNG
                           Deputy Attorney General
14                         Attorneys for Defendants Childers, Gibbs-Battenfeld, Guerra, and
                           Woodford

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defs.' Not. Mot. & Mot. Summ. J.                                    *Roberson v. Woodford, et al*
                                                               Case No. C 07-3497 CRB (PR)

16

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Roberson v. Woodford, et al**

No.:    **C 07-3497 CRB (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>February 13, 2008</u>, I served the attached

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

**DECLARATION OF CHRISTOPHER YOUNG SUPPORTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**DECLARATION OF L. GIBBS-BATTENFELD SUPPORTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Lennis L. Roberson**
**D-34017**
**Correctional Training Facility**
**P.O. Box 686**
**Soledad, CA 93960-0686**
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on February 13, 2008, at San Francisco, California.

| L. Santos | | |
| --- | --- | --- |
| Declarant | | Signature |