FILED

MAY 1 6 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

Lennis L. Roberson,                )
                                   )      Case No. C07-3498 CRB (PR)
         Plaintiff,                )
                                   )      PLAINTIFF'S OPPOSITION
         v.                        )      TO DEFENDANTS MOTION
                                   )      FOR SUMMARY JUDGMENT
Jeanne Woodford, et al.,           )
                                   )
         Defendant[s]              )

## Introduction

Defendants contend that since plaintiff's grooming standard violations were in 1998 -- plaintiff is ineligible for behavioral credits.  September 22, 2000 the Religious Land Use Institutional Persons Act (RLUIPA) was signed into law by President William J. Clinton.  The defendants were aware of the change in law, and put on notice by CDCR memorandum, but defendants elected not to follow federal law and impermissible burden plaintiff's free exercise of religion.  The defendants chose to follow departmental regulation several years after they were aware that their actions and/or omissions were violating plaintiff's rights.

On February 15, 2006, plaintiff appeared before the Unit Classification Committee where his C-Status was removed effective January 17, 2006.  Plaintiff's was removed from C-Status and claimed religious reasons before Director Dovey's February 27, 2006 memo addressed "to the Wardens of all CDCR institutions explaining the January 17 emergency regulation. (Defs.' Not. Mot. & Mot. Summ. J. 6:13)

Director Dovey instructed that amy inmate who had been found guilty of an RVR based on grooming standards, and who violated the standard "based on previously stated religious beliefs" would receive full restoration of credit loss for violations occurring on or after September 22, 2000". (See

2.

Defs.' Not. Mot. & Mot. Summ. J. 6:19-22)  Plaintiff stated
his noncompliance with grooming standard/policy was based on
religious belief several times before Director Dovey's memo.
(See Decl. of L.L. Roberson A7(a), A7(b), A7(c), and A7(d);
Defs.' Not. Mot & Mot. Summ. J. 7:6-7)

Defendant's contend, "according to institutional policy,
credit restoration would be extended to inmates who received
disciplinary violations in or after September 22, 2000."
(Defs.' Not. & Mot. Summ. J. 7:14)  Plaintiff can show by
declaration and supporting documents of inmates that received
disciplinary violation prior to September 22, 2000 and were
given credit restoration. (See Decl. of O.S. Brown, Decl. of
P.D. Shotwell, and Decl. of A. Alto.)

Plaintiff can show that defendants enforced grooming
standard in violation of his rights under the First and
Fourteenth Amendments and RLUIPA.  Therefore, defendants are
not entitled to judgment as a matter of law, and defendants
Notice and Motion for Summary Judgment should be denied.

3.

**I.**

**PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF IS NOT MOOT.
DEFENDANT'S ARE NOT ENTITLED TO SUMMARY JUDGMENT.**

Defendants assert that plaintiff's grooming policy claim[s] are moot. Defs. Not. Mot. & Mot. Summ. J. (8: 12-28) However, there is a live controversy.

Plaintiff seeks money damages in addition to other relief -- plaintiff is entitled to and may still recover these damages from the Defendants.

Although, it may appear that the plaintiff may no longer be affected by the CDCR recently implemented new regulations and other amended regulation[s] related to plaintiff's ability to grow facial hair (free exercise) in accordance to his faith Al-Islam and the amendment[s] related to Cal. Code Regs. tit. 15 §3060-62 (2006). This does not render plaintiff's action moot. Plaintiff's claims may entitle him to an award of nominal damages. The Court made this clear when a plaintiff's pursuit of nominal damages provides a sufficiently concrete interest in the outcome of the litigation to confer standing to pursue declaratory relief and thereby prevents mootness. "[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." See <u>Yniguez v. State</u>, 975 F.2d 646 (9th Cir 1992) The case or controversy is satisfied through all stages of federal judicial proceedings and mandates that parties continue to have personal stake in the outcome of a lawsuit throughout the litigation U.S.C.A. 28 2254 exception to mootness doctrine applies only in exceptional situations, where the following

4.

1  two circumstances are simultaneously present: (1) Challenged action

2  is in its duration too short to fully litigated prior to cessation

3  or expiration, and (2) There is a reasonable expectation that the same

4  complaining party will be subject to the same action again. An

5  incarcerated convict's (or a parolee's) challenge to conviction always

6  satisfies the case-or-controversy requirement because the incarceration

7  (or the restriction imposed by the terms of parole) constitutes a

8  concrete injury caused by the conviction's invalidation. See Spencer

9  v. Kemoa, 118 S.Ct 978 (1998) id. 118 S.Ct 980.

10      Plaintiff suffered the initial Rule Violation Reports, and the

11  complete gambit of disciplinary measures -- which included C-Status

12  and loss of privileges.  For years Plaintiff has been targeted with

13  unwarranted cell moves, Loss of Time Credit for every day spent on

14  C-Status, an Administrative Segregation (AD-Seg) placement, Housed

15  at CTF-North a higher Custody level Facility (which amounts to an

16  adverse transfer) in an effort to coerce plaintiff into modifying and/or

17  abandoning essential precept and tenants of his religious beliefs "puts

18  the same king of burden upon the free exercise of religion as would

19  a fine imposed against plaintiff." **Warsoldier v. Woodford,** 418 F.3d

20  (9th Cir. 2005) id 418 F.3d 1001  [T]he loss of first Amendment

21  freedoms for even minimal period of time, unquestionably constitutes

22  irreparable injury" for purpose of the issuance of preliminary

23  injunction." **Elrod v. Burns,** 427 U.S. 347, 373.  Therefore defendants

24  motion for Summary Judgment should be denied.

25

26

27

28

5.

**B.    RLUIPA DOES HAVE RETROACTIVE EFFECT.**

Plaintiff believes that defendants' current stand on RLUIPA being silent on whether it applies retroactively. Defs. Not. Mot. & Mot. Summ. J. at (11: 6-15) is incorrect.

In <u>U.S. v. U. Baldo - Fiqueroa</u> 347 F.3d 718 (9th Cir 2003) the Court focuses on three primary factors in determining whether the purpose of a retroactive statute comports with due process.  First, the Court looks to whether Congress applied a law retroactively to remedy a conflict in previous legislation.  Second, the Courts examines whether Congress provided a specific rationale for applying the statute retroactively because "[T]he retrospective aspects of legislation as well as the prospective aspects must meet the test of due process, and justification for the latter may not suffice for the former." at id 728.  Finally, the Court considers the severity of the consequences of the retroactive legislation, including the effect of the legislation on a party's interest in fair notice and repose.

When a statute's Plain Meaning is clear, turns legislative history are unnecessary to construe statute; but where a statutes yields to more than one reasonable interpretation, the Court of Appeals turns to legislative history, looking to the entire statutory scheme" <u>Oliver v. Keller</u> 289 F.3d 623 (9th Cir 2002)  RLUIPA is founded on plain meaning. See <u>Minte v. Roman Catholic Bishop or Springfield</u> 434 F.Supp 2d 309, 318 (D. Mass 2006)  When a Statute does not define a term in accordance with its

6.

"ordinary" contemporary, common meaning <u>San Jose Christian College City of Morgan Hill</u> 360 F.3d 1024, 1034 (9th Cir 2004); <u>Harper v. Poway Unified School Dist.</u> 445 F3d 1166 (9th Cir 2006).

Defendants seek to rewrite RLUIPA by modifying the intent of Congress. RLUIPA is supported by Supreme Court decisions in <u>Employment Division v. Smith</u>, 494 U.S. 872 (1990); <u>City of Bourne v. Flores</u>, 521 U.S. 504 (1997), mandates a stricter standard or review for person regulations that burdens the free exercise of religion than the reasonableness standard under Turner. See <u>Warsoldier v. Woodford</u>, 418 F.3d 989, 994 (9th Cir 2005). The Supreme Court upheld the Constitutionality of RLUIPA in <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 721 (2005).

The application of RLUIPA Constitutionality depends on Congress' power to enforce by appropriate legislation, the provisions of the U.S. Constitution's Fourteenth Amendment. RULIPA will be deemed Constitutional only if there is "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end" <u>City of Boern</u>, 521 U.S. at 520 (1997), <u>Guru Nanak Sikh v. County of Sutter</u>, No 03-17343 D.C. No. CV-02-10128, 10133. At the end of the day, RLUIPA triggers stricter scrutiny under the First Amendment a governmental burden must have to coerce individuals into acting contrary to their religious beliefs <u>Thomas v. Rev Bd. Ind. Employment</u> 450 U.S. 707, 717-18 (1981) Also See <u>Lyng v. Nw. Indian Cemetery Protective</u>

7.

Association 485 U.S. 439-450-51 (1988), Midrash Sephardi

Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir

2004)  Thus RLUIPA does apply to plainteff's 14th Amendment

allegation as well as applying to plaintiff's grooming

violations.

Finally, in the context of plaintiff's Free Exercise of

Religion Claim (Compl. at 24):

Defendants substantially burdened plaintiff's free

exercise by punishing plaintiff for exercising religion by

placing plaintiff in Ad-Seg (Ad-Seg and ASU are used

interchangeably for "Administrative Segregation Unit"). See

Compl. 13:5-27 to 14:1-4.  See Decl. L.L. Roberson A7; Jd. Not.F

Defendants substantially burdened plaintiff's free

exercise of religion by punishing him for free exercise of

religion by restricting plaintiff to the following but not

limited to: one-forth of the maximum monthly canteen draw.

See Compl. 14:11-16  See Decl. A7.

Defendants substantially burdened plaintiff's free

exercise of religion by punishing him for free exercise of

religion by restricting plaintiff to telephone calls on

an emergency basis only. See 14:17 of Compl.  See Decl. A7.

Defendants substantially burdened plaintiff's free

exercise of religion by punishing him for free exercise of

religion by limiting plaintiff's exercise yard access,

approximately 10 hours a week. See 14:18 of Compl.; Decl. A7.

Defendants substantially burdened plaintiff's free

exercise of religion by punishing him for free exercise of

religion by restricting plaintiff to no access to any other

8.

recreational or entertainment activities. See Compl. 14:19

Defendants substantially burdened plaintiff's free exercise of religion by punishing him for free exercise by restricting plaintiff to no personal property packages which includes, but is not limited to televisions, CD-players, typewriters and etc. See Compl. 14:21, Jd. Not. Ex. F, Decl. L.L. Roberson Ex. A7.

Defendants substantially burdened plaintiff's free exercise of religion by punishing him for free exercise of religion by denying plaintiff access to law library. See Compl. 15:1-5

Defendants substantially burdened plaintiff's free exercising of religion by punishing him for free exercise of religion by forcing plaintiff to choose between access to law library and exercise yard. See Compl. 15:21-23

Defendants substantially burdened plaintiff's free exercise of religion by punishing him for free exercise of religion by forcing plaintiff to move to C-status wing as punishment for exercising religious belief. See Compl. 17:15-26

Defendants substantially burdened plaintiff's free exercise of religion by punishing him for free exercise of religion by stymieing and/or denying plaintiff access to the appeal process. See Compl. 20:26-21:1-5.

Defendants substantially burdened plaintiff's free exercise of religion by punishing him for free exercise of religion by denying plaintiff retroactive time credits. See Compl. 22:19 - 23:1-7; Decl. of E.W. Williams Ex. A, Decl. O.S. Brown Ex. A1, Decl. P.D. Shotwell Ex. A2, Decl. A. Alto Ex. A3, Decl. L.L. Roberson Ex. A7

"The Free Exercise Clause of the First Amendment of
the U.S. Constitution provides the Congress shall make no
law prohibiting the free exercise" of religion.  The Clause
prohibits the government from Compel[ling] affirmation of
religious belief, punish[ing] the expression of religion
doctrines it believes to be false, impos[ing] special
disabilities on the basis of religious views or religious
status or lend[ing] its power to one or the other side in
controversies over religious authority or dogma. Employment
Div. Dept. of Human Res. of Oregon v. Smith 494 U.S. 872,
877, 110 S.Ct 1595, 108 L.Ed. 2d 876 (1990), Harper v. Poway
Unified Sch. Dist. 445, F.3d 1166, 1186 (9th Cir 2006)

Lyng v. NW. Indian Cementary Protective Association
485 U.S. 439, 450-51 (1988) explainning that to trigger
strict scrutiny under the First Amendment a governmental
burden must have "a tendency to coerce individuals into
acting contrary to their religious belief."  These cases
demonstrate that a substantial burden must place more than
an inconvenience on religious exercise. See Midrash Sephardi
Inc. v. Town of Surfside 366 F.3d 1227  (11th Cir 2004)
Therefore Defendants' Motion for Summary Judgment should
be denied.

10.

## II Plaintiff Does Present Evidence
## Disputing Material Facts

Defendants contend that plaintiff has no evidence that prison officials knew at either California State Prison (CSP) Corcoran or Correctional Training Facility (CTF) Soledad, that plaintiff was a practicing Muslim and could not comply with grooming policy/regulations based on his religious beliefs. (Defs Not Mot and Mot Summ J. 10:1-8)  Before a prison regulation alleged that infringe constitutional rights are judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental Constitutional rights. See O'Lone v. Shabazz U.S. 342, 349; 107 S.Ct 201; 96 L.Ed 2.d 282 (1997)  Turner v. Safley, 842 U.S. 78, 98; 107 S.Ct 2254; 96 L.Ed 2.d 64 (1997.

There are Four (4) factors to be considered in determining whether a regulation is reasonably related to legitimate penological.  Plaintiff arrived at CTF Soledad February 3, 1999 and until June 9, 2004 plaintiff was denied all religious artifacts, Jummuah (congregational Prayer services), religious diet, and the wearing of his beard for religious reasons.  (See Ex. A5 Decl. of R. Laudermill) The Court must ascertain whether there are "ready alternative" available to the regulations.

11.

1    (1) Whether the regulation or practice has a logical

2    connection to the penological interest used to justify it,

3    (2) whether there are other means of exercising the right

4    being restricted, (3) whether the exercise of the prisoner's

5    right will have an adverse effect on guards or other

6    prisoners, and (4) whether there are other alternatives

7    open to the prison administration to accommodate the right

8    with a minimal cost or burden". See **Turner v. Safley,** 842

9    U.S. 78, 89, 107 S.Ct 2254, 96 L.Ed 2.d 64 (1987).

10        Therefore Defendants are not entitled to summary

11   judgment and defendants' motion for summary judgment should

12   be denied.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Plaintiff Sets Forth Facts
### Showing a Genuine Issue

To defeat Summary judgment Plaintiff "must set forth specific facts showing that there is a genuine issue". (See Fed. R. Civ. P. 56(e) Plaintiff presents declarations on specific facts that support his allegations of injury by affidavit. (See Hubbard v. 7-Eleven Inc., 433 F.Supp 2d 1134, 1141 (S.D. Cal 2006)

Secondly, defendants assert after Plaintiff transfers to CTF Soledad the Initial Classification Committee reviewed plaintiff's prison files and asked plaintiff if he would comply with grooming regulations. (St. Facts 10)  Plaintiff simply responded "no". (id)  The disciplinary history reviewed by the Committee did not contain any indication that plaintiff violated grooming policies based on his religious beliefs. (id 6-9, 17) Def's Not. Mot. & Summ. J. 8:25) (See Plaintiff's Decl. A7, A7(a) A7(b)

Thirdly, defendants contend that plaintiff first requested that his classification be adjusted in August 2005 (See Plaintiff's Decl. A7, A7(a) A7(b) and A7(d) (pg. 3 Ex. H attached to appeal, A. Describe Problem Continued: states, "Appellate has not refused assignment.  The decision regarding RLUIPA's constitutionality means appellate has not violated a regulation that warrants Work Group-C placement. (See Comp. Ex. H pg. 3)  The only reason Plaintiff was removed from Work Group-C was due to plaintiff's religious conviction to Al-Islam.  The wearing of beards for the Muslim is a tenant that the defendants were aware of. (See Mayweather v. Terhune, 314 F.3d 1062 (9th Cir 2002)

13.

Mayweather v. Newland 328 F.Supp 2.d 1086 (E.D. Cal 2004)

and (Warsoldier v. Woodford 418 F.3d 989 (9th Cir 2005).

Work Group-C (Work Group-C and C-Status are used
interchangeably) was amended because RLUIPA and subsequent
Court rulings related to exemptions to the grooming policy
for **religious reasons.** CDCR's grooming policy made no
exceptions for plaintiff's religious reasons which plaintiff
is entitled. In fact plaintiff does present evidence, that
prison officials were aware they had and were violating
plaintiff's rights. (See Judicial Notice Exhibit C)

There are factors to consider if plaintiff had been
denied Free Exercise of his religion. These Four factors
are to be considered in determining whether a regulation
is reasonably related to legitimate penological interest.
(1) Whether the regulation or practice has a logical
connection to the penological interest used to justify it,
(2) whether there are other means of exercising the right
being restricted, (3) whether the exercise of the prisoner's
right will have an adverse effect on guards or other
prisoners, and (4) whether there are other alternatives
open to the prison administration to accommodate the right
with a minimal cost or burden". See **Turner v. Safley,** 842
U.S. 78, 89, 107 S.Ct 2254, 96 L.Ed 2.d 64 (1987).

Upon plaintiff's arrival at CTF Central February 3,
1999 to June 2004 plaintiff was denied all religious
expression which includes but not limited to religious
artifacts, Jummah Prayer, religious diet, and my beard for

14.

1    religious reasons. (See Declaration of R. Laudermill

2    attached hereto as Exhibit A5)

3        The Court must ascertain whether there are "ready

4    alternatives" available to the regulations.

5    **III. The Equal Protection Clause**

6            Merits

7        The Equal Protection Clause ensures that prison

8    officials can not discriminate against particular religion.

9    Freeman, 125 F.3d at 737.  Plaintiff has the Burden to show

10   that officials intentionally acted in a discriminatory manner

11   to support a §1983 claim.  FDIC v. Henderson, 940 F.3d 465,

12   471 (9th Cir 1991); Sischo-Nownejad v. Merced Community

13   College Dist., 934 F.2d 1104, 1112 (9th Cir 1991) (stating

14   that discriminatory intent can sometimes be inferred by the

15   mere fact of different treatment).  The Ninth Circuit in

16   Sischo-Nownejad stated:

17           *The evidence may be either direct or circumstantial, and*
             *the amount that must be produced in order to create a*
18           *prima facie case is "very little." Normally, when such*
             *evidence has been introduced, a court should not grant*
19           *summary judgment to the defendant on any ground relating*
             *to the merits. Even if the defendant articulates a*
20           *legitimate, nondiscriminatory reason for the challenged...*
             *decision, thus shifting the burden to the plaintiff to*
21           *prove that the articulated reason is pretextual, summary*
             *judgment is normally inappropriate. When a plaintiff has*
22           *established a prima facie inference of disparate treatment*
             *through direct or circumstantial evidence of*
23           *discriminatory intent, he will necessarily have raised a*
             *genuine issue of material fact with respect to the*
24           *legitimacy or bona fides of the [defendant's] articulated*
             *reason for its...decision. Specifically, in evaluating*
25           *whether the defendant's articulated reason is pretextual,*
             *the trier of fact must at a minimum, consider the same*
26           *evidence that the plaintiff introduced to establish her*
             *prima facie case.*

27

28

                                    15.

1  934 F.2d at 1110 (internal quotation marks and citations

2  omitted).

3      Plaintiff produces evidence that creates a prima facie

4  case.  (1) I was placed on Work/Privilege  Group C (C-Status)

5  for wearing my beard for religious reasons and being deprived

6  of privileges (special purchases, telephone use, etc...)

7  and good time credits, while general population inmates

8  were allow good time credits and a full panoply of privilege.

9  See Judicial Notice Exhibit E, and Exhibit F.  See

10  Declarations A, A1, A3, A4 and A7.

11      The plaintiff's deprivations were more than an

12  inconvenience all showing they reached the point of

13  Constitutional violations. See **May v. Baldwin**, 109 F.3d

14  557, 565-66 (9th Cir 1997) ("evidence of non-movant is to

15  be believed and all reasonable inferences are to be drawn

16  in his favor); **Liberty v. Lobby**, 477 U.S. at 255 (1986)

17      As aforementioned plaintiff was denied all religious

18  expression from February 3. 1999 through 2002.  Subsequently,

19  "relevant inquiry under this factor is not whether the inmate

20  has an alternative means of engaging in the particular

21  religious practice that he or she claims is being affected;

22  rather, we are to determine whether the inmates have been

23  denied all means of religious expression." See **Ward**, F.3d

24  at 877; See also **Johnson v. Moore**, 948 F.2d 517, 520 (9th

25  Cir 1991). (See Laudermill Declaration at Exhibit A5)

26

27

28

16.

1    Plaintiff has established a prima facie inference of

2    disparate treatment by the defendants.  The disparate

3    Treatment of the plaintiff by the defendants directly had

4    a discriminatory intent.  What is more important is plaintiff

5    highlights a genuine issue of material fact with respect to

6    articulating reasons for disparate treatment for wearing

7    his beard for religious reasons, by defendants.

8        Therefore Defendants are not entitled to summary

9    judgment and defendants' notice and motion for summary

10   judgment should be denied.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### IV. Plaintiff Did Alllege He Was Wrongfully Disciplined At Administrative Level

Defendants overview of plaintiff's complaint is out of step with the core value of its facts. First, defendants' misplace their argument, in regard to, defendants convoluting plaintiff's Chronological facts (Compl. 10:16-19) defendants refer to these facts at Compl. 6 and 7. Secondly, defendants highlight that "Plaintiff filed an inmate appeal challenging one out of the four grooming violations he received in December (1988) (Id 8.) in that appeal, plaintiff never asserted that his faith mandated that he not shave, and that he should not be disciplined for that reason. (Defs.' Not. Mot. & Mot. Summ J. 11:18-25) The Court should take notice that defendants either oversighted this contention or groped through the Complaint. This contention is at plaintiff's complaint -- Compl. at 10-11. Most importantly plaintiff's allegations do not reflect that he is contending any of Decembers four Rule Violation Reports (RVRs), but only attempted to show the chronology of the factual history of events and deprivation he suffered as a result of his refusal to comply with the grooming policy for religious reasons. (See L.L. Roberson Decl. Ex A7) "42 U.S.C. 1997e(a). The PLRA does not require the plaintiff to

18.

1  affirmative plead and prove exhaustion, but rather the PLRA's

2  exhaustion requirement is an affirmative defense that must

3  be raised by the defendant. Jones v. Bock, 127 S.Ct 910,

4  919 (2007); Wyatt v. Terhune, 315 F.3d 1108, 1117 (9th Cir

5  2003) At this juncture defendants do not brief in the

6  response nor do they seriously dispute any form of an

7  affirmative defense in other context. Defendants only argue

8  a prisoner may not sue under RLUIPA without exhausting

9  administrative remedies, plaintiff does not allege that

10 prison officials wrongfully disciplined him for shaving

11 his beard nor could he, because he never pursued

12 administrative remedies for the claim. (Def Not Mot & Mot

13 Summ J.) at 12:1-16)

14      In order to determine whether an inmate appeal provides

15 the necessary factual basis for a subsequent lawsuit, "the

16 Court must determine whether a reasonable investigation

17 of the [inmate appeal] would have uncovered the allegations

18 now before it" See Tillis v. Lamarque, 2006 LW 644876 *7

19 (N.Cal 2006). Here the exhausted inmate appeal stated that

20 plaintiff inmate appeal No. CTF-06-01218 entitled plaintiff

21 to retroactive credit restoration for Grooming Standard

22 violation for CDC Form 115 Rules Violation Report (RVR)

23 plaintiff received in 1998. The appellate request to be

24 granted Work Group/Privilege Group (PG/WG) A-1/A status

25 retroactive to January 2006. (See Compl. Ex. J page 32 and

26 K page 12 for verification of exhaustion and investigation

27 of CDC-602 Administrative Appeal).

28

19.

1    Here, the plaintiff would like to bring to the attention

2  of the Court the defendants' attempt to confuse and/or

3  mislead the Court with the introduction of incomplete and/or

4  documents clearly misrepresentative of the facts.  The

5  defendants' contend on the director's Level that plaintiff

6  requested, "Work Group/Privilege Group (WG/PG) A-1/A status

7  retroactive to January 16 2006." (See Compl. Ex. K page

8  12)  Defendants' claim conflicts with plaintiff's actual

9  request of September 22, 2000. (See Compl. Ex. K pages 1

10 and 3.)  Plaintiff additionally requested  retroactive time

11 credit to January 1999. (See Compl. Ex. K page 1.)  At no

12 time has plaintiff requested retroactive credits to January

13 16, 2006 as is stated by defendants.

14    Plaintiff states in administrative appeals "The decision

15 regarding RLUIPA's constitutionality means appellate has

16 not violated a regulation... (See Compl. Ex H pg. 3).

17 Additionally plaintiff states, "imposes punitive and/or

18 disciplinary measure without due process of law" (See Ex. K

19 pg. 3.).  For the above stated reasons Defendants' Notice

20 and Motion for Summary Judgment should be denied.

21

22

23

24

25

26

27

28

20.

Defendants contend that they are entitled to qualified immunity because (1) Plaintiff has failed to show that a constitutional right was violated by Defendants, and (2) it would not have been clear to a reasonable official that their conduct was unlawful in the situation confronted.

### V. Legal Standard

### 1. Qualified Immunity

The defense of qualified immunity protects "government officials...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law;" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by plaintiff was not clearly established or the [official] could have reasonably believed that his particular conduct was lawful. "Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir 1991).

A court considering a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right, then proceed to determine if the right was "clearly established. "Wilson

21.

1  v. Layne, 526 U.S. 603 (1999); Conn v. Gabbert, 526 U.S.

2  286, 290 (1999). The threshold question must be: Taken

3  in the light most favorable to the party asserting the

4  injury, do the facts alleged show the officer's conduct

5  violated a constitutional right. Saucier, 533 U.S. at 201;

6  see Martin v. City of Oceanside, 360 F.3d 1078, 1082 (9th

7  Cir 2004) (in performing the initial injury, court is

8  obligated to accept plaintiff's facts as alleged, but not

9  necessarily his application of law to the facts; the issue

10 is not whether a claim is stated for a violation of

11 plaintiff's constitutional rights, but rather whether the

12 defendants actually violated a constitutional right.

13      "If no constitutional right would have been violated

14 were the allegations established, there is no necessity

15 for further inquiries concerning qualified immunity."

16 Saucier, 533 U.S. at 201.  On the other hand, if a violation

17 could be made out on the allegations, the next sequential

18 step is to ask whether the right was clearly established.

19 This inquiry must be undertaken in light of the specific

20 context of the case, not as a broad general proposition.

21 The relevant, dispositive inquiry in determining whether

22 a right is clearly established is whether it would be clear

23 to a reasonable officer that his conduct was unlawful to

24 the situation he confronted.  If the law did not put the

25 officer on notice that his conduct would be clearly unlawful,

26 Summary judgment based on qualified immunity is appropriate.

27

28

1      Even if the violated right is clearly established

2  qualified immunity shields an officer from suit when he

3  makes a decision that, even if constitutionally deficient,

4  reasonably misapprehends the law governing the circumstances

5  he confronted. Brossean v. Haugen, 543 U.S. 194, 198 (2004);

6  Saucier, 533 U.S. at 205-06.  If "the officer's mistake

7  as to what the law requires is reasonable...the officer

8  is entitled to the immunity defense."  Plaintiff bears the

9  burden -- the law clearly establishes Davis v. Schere, 468

10  U.S. 183, 197 (1984).  Plaintiff has outlined how defendants

11  unreasonably limited his Free Exercise of religious rights.

12  (See Judicial Ex. A, Ex. C, Ex. E, Ex. F, and Ex. G)

13      Defendants were placed on notice by CDC memo that

14  clearly established they were aware of plaintiff's

15  Constitutional rights, and their actions were violating

16  those rights. (2) Defendants know that inmates at California

17  State Prison, Solano (Solano) were protected from progressive

18  disciplinary action for wearing their beards for religious

19  reasons.  "[A] complete denial of the ability to observe

20  a religious practice is not required to demonstrate an

21  infringement" of a prisoner's right to Free Exercise" 183

22  F.3d at 1213.  As the Tenth Circuit stated in Makin.

23      The Equal Protection Clause requires the state to treat

24  all similarly situated people equally. (See City of Cleburne

25  v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  The

26  Equal Protection Clause entitles each prisoner to, "a

27  reasonable opportunity of pursuing his faith comparable to

28

1  the opportunity afforded fellow prisoners who adhere to

2  conventional religious precepts." <u>Cruz</u>, 405 U.S. at 322.

3  Defendants can not show rational basis why they allowed

4  inmates to wear their beards for religious reasons at Solano,

5  but denied plaintiff to wear his beard for religious reasons.

6  In the constructs of disparate treatment inmates at Solano

7  were absolutely free from disciplinary action by the same

8  agency CDCR and/or CDCR policy makers which shows (1)

9  Defendants knew plaintiff's beard was for religious purposes

10  (2) Denial of plaintiff to wear beard for religious purposes

11  as well as the loss of privileges is an equal protection

12  analysis to establish defendants did not have a rational

13  basis for plaintiff's disparate treatment.

14      **VI. The Establishment Clause Claims**

15      Plaintiff's Establishment Clause claim paves the way to

16  his liberties under the First Amendment and violates the

17  Fourteenth Amendment.  Plaintiff provides the Court evidence

18  of the defendants' disregard for plaintiff's rights, and

19  defendants' <u>flagrant</u> mistreatment of plaintiff resulting from

20  the Prison's grooming policy.  Plaintiff presents affidavits,

21  declarations: supporting his allegations, all made on

22  personal knowledge, which is in the frame work of Federal

23  Rule of Civil Procedure 56(e)(1).

24      Defendants underscore the fact that plaintiff had been

25  subject to the level of substantial burden prohibited by

26  RLUIPA even after they received memorandum[s] from the CDCR

27  Departmental heads.  Plaintiff's privilege losses are nearly

28

24.

1   identical to Warsoldier (1) lost opportunity for assignment

2   duties; (2) Placed in administrative segregation from mail

3   population recreation yard; (3) Monthly draw at the prison

4   store reduced from $180.00 to $45.00, and phone access

5   porhibited; (4) Prohibited from making special purchases.

6   (See Warsoldier v. Woodford, 418 F.3d 989, 992 (9th Cir)

7   **VII. Qulified Immunity Standard**

8       The qualified immunity standard requires a two-step

9   analysis (1) Was the law governing the official's conduct

10  clearly established? (2) Under that law, could a reasonable

11  officer have believed the conduct was lawful? At the time

12  and period 2000 - 2005 it had been well established that

13  prisoners retained the protection of the Free Exercise

14  clause. (See O'Lone v. Estate of Shabazz, 482 U.S. 342,

15  348; 107 S.Ct 2400, 2404; 96 L.Ed 282 (1987)

16      More importantly it may be appropriate for the trier of

17  fact to consider information possessed by prison officials at

18  the time of alleged violations. Plaintiff contended

19  throughout the administrative grievance process and in this

20  litigation that he suffered as a result of disciplinary

21  actions because of religious persecution. See Memo Judicial

22  Notice placing in Administrative Segregation, and defendants

23  were aware inmates housed in Solano were allowed to wear

24  their beards for religious purposes without suffering

25  irreparable harm such as the case here before the court.

26      Plaintiff has alleged that defendants failed to grant

27  his inmate appeals and continue to deny plaintiff access to

28

25.

1    Plaintiff has alleged that defendants failed to grant

2  his inmate appeals and continued to deny plaintiff access to

3  prison assignment and time credit earning status; denied

4  general population yard access; denied special purchase

5  (items such as but, not limited to personal electronic

6  appliances, personal footwear, and personal clothing);

7  restricted telephone use to emergency basis -- to be

8  determined by staff; restricted canteen draw to one quarter

9  the monthly limit. (See Compl. at 14:11-22)  In the section

10  identifying each defendant in the complaint, plaintiff

11  specifies the role of each defendant in implementing

12  religious policies at CTF. (See Compl.  at 5:11 - 9:20)

13  Plaintiff contends that the Court will find that plaintiff

14  has alleged that in denying his appeals -- the prison

15  officials know of and participated in the deprivation of

16  his rights to Free Exercise of his religion.  (See Taylor,

17  880 F.2d at 11045; Hamilton, 981 F.2d at 1067)

### Conclusion

19    Plaintiff does present a dispute in a genuine issue of

20  fact for trial.  Therefore defendants' request that this

21  Court's grant of judgment in the defendants' favor should be

22  denied.

23    5-15-08

26.

PROOF OF SERVICE BY MAIL
By Person in State Custody
(C.C.P. §§ 1013(A), 2015,5)

Case Name: Roberson v. Woodford, et al
Case No.: C 07-3497 CRB (PR)


    I, Lennis L. Roberson, I declare I am over 18 years of age and I am party

to this action.  I am a resident of CORRECTIONAL TRAINING FACILITY prison, in

the County of Montery, State of California.  My prison address is:

Lennis L. Roberson, CDCR# D-34017
Correctional Training Facility
P.O. Box 689, Cell CW/128
Soledad, CA 93960-0689

    On May 15, 2008, I served the attached:

    Opposition to Defendants' Notice Of Motion and Motion For Summary Judgment,
    Motion for Judicial Notice,
    Declaration of E.W. Williams,
    Declaration of O.S. Brown,
    Declaration of P.D. Shotwell,
    Declaration of A. Alto,
    Declaration of H. Little,
    Declaration of R. Laudermill,
    Declaration of J.R. Gearin,
    Five Declarations of L.L. Roberson,

on the parties herein by placing true and correct copies thereof, enclosed in a

sealed envelope (verified by prison staff), with postage thereon fully paid, in

the United States Mail in a deposit box so provided at the above-named

institution in which I am presently confined.  The envelope was addressed as

follows:

Attorney General of California       U.S. District Court
455 Golden Gate Ave. Suite 11000    Northern District of California
San Francisco, CA 94102-7004       450 Golden Gate Ave.
                            San Francisco, CA 94102

    I declare under penalty of perjury under the laws of the state of California

the foregoing is true and correct and that this declaration was executed on

May 15, 2008.

_L. Roberson_
Lennis L. Roberson

L. Roberson  D-34017
CTF Central  CW-128
PO Box 689
Soledad CA 93960-0689

U.S. District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102