# ORIGINAL

FILED

MAY 1 6 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lennis L. Roberson     ) | Case No. C 07-3497 CRB (PR) |
| ) | |
| Plaintiff     ) | DECLARATIONS IN SUPPORT |
| ) | OF PLAINTIFF'S OPPOSITION |
| v.     ) | TO DEFENDANTS' NOTICE AND |
| ) | MOTION FOR SUMMARY JUDGMENT |
| Jeanne Woodford, et al     ) | |
| ) | |
| Defendants     ) | |

**DECLARATION OF:** submitted and attached herein.

```
A      Decl. of E.W. Williams,
A1     Decl. of O.S. Brown,
A2     Decl. of P.D. Shotwell,
A3     Decl. of A. Alto,
A4     Decl. of H. Little,
A5     Decl. of R. Laudermill,
A6     Decl. of J.R. Gearin,
A7     Decl. of L.L. Roberson,
A7(a)  Decl. of L.L. Roberson,
A7(b)  Decl. of L.L. Roberson,
A7(c)  Decl. of L.L. Roberson,
A7(d)  Decl. of L.L. Roberson,
```

# EXHIBIT    "A"
## Declaration of E.W. Williams

1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11

12  Lennis L. Roberson                )        Case No. C 07 3497 CRB(PR)
                                      )
13         Plaintiff                  )        DECLARATION OF E.W.
                                      )        WILLIAMS IN SUPPORT OF
14         v.                         )        PLAINTIFF"S OPPOSITION TO
                                      )        DEFENDANTS' NOTICE AND
15  Jeanne Woodford, Director et el.  )        MOTION FOR SUMMARY JUDGMENT
                                      )
16  _____Defendant[s]_____ )

17
18      I E. Wayne Williams declare:

19      1. I am a prisoner of the California Department of

20  Corrections and Rehabilitation (CDCR)  currently housed in

21  the Correctional Training Facility (CTF) at Soledad

22  California.

23      2. I was formerly housed in the Administrative

24  Segregation (AD-Seg) Unit at CTF's X-Wing next door to the

25  cell in which housed Lennis L. Roberson.  The plaintiff told

26  me on several occasion that he believed us being on C-status

27  and in AD-Seg because of religious beliefs was wrong.  I

28  have personal knowledge and I am competent to testify to

1  the matter[s] set forth herein, and if called upon to do so,

2  I would and could so testify.  I submit this declaration in

3  support of Plaintiff's motion.

4      3. The plaintiff often discussed with me how he believed

5  he was being abused and mistreated because C-status restricted

6  him to; One-fourth maximum canteen draw, access to Telephone

7  calls on emergency basis only, Yard access limited, No assess

8  to any other recreational or entertainment activities, No

9  accrual of excused time off, and No personal property packages.

10     4. Plaintiff also told me he believed being housed in the

11 AD-Seg unit was unfair and an overly oppressive hardship

12 designed to crush him spiritually and emotionally.

13     5. On several occasion plaintiff dicussed how he believed

14 CDC's staff -- denying him access to mainline dinning hall[s]

15 and yard was effectively isolating him from the general

16 population for his religious belief and principles.

17     6. On many occasions plaintiff expressed a need to speak

18 with his teenage son and his ailing mother over the phone.

19     7. Plaintiff believes his relationship with his teenage

20 son was strain resulting from plaintiff being restricted from

21 phones -- emergency only telephone access.

22     8. C-status rendered plaintiff unable to talk to his

23 ailing mother -- she was placed in a nursing/rest home shortly

24 before plaintiff's removal from C-status and remained there

25 until she died March 2007.

26

27

28

2.

9. Plaintiff often said that CDC's staff thinks they are more powerful than GOD, and they are attempting to convince and/or coerce him into modifying his belief by using progressive disciplinary measures.

10. Plaintiff additionally believes his adherence to his religious beliefs/philosophy caused him to be denied retroactive time credits.

I (E. Wayne Williams) was on C-status and was granted retroactive time credits which were denied to plaintiff.

I declare under penalty of perjury that the foregoing is true and correct.  Executed at CTF-Central, Soledad, California, on June 26 , 2007.

/s/ E. Wayne Williams

E.W. Williams E-09546

3.

# EXHIBIT   "A-1"
## Declaration of O.S. Brown

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Lennis L. Roberson | ) | Case No. C 07 3497 CRB(PR) |
| | ) | |
| Plaintiff | ) | DECLARATION OF OMAR S. |
| | ) | BROWN IN SUPPORT OF |
| v. | ) | PLAINTIFF'S OPPOSITION TO |
| | ) | DEFENDANTS' NOTICE AND |
| Jeanne Woodford, Director et el. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| Defendant[s] | ) | |

I Omar S. Brown declare:

1. I am currently a prisoner of the California Department of Corrections and Rehabilitation (CDCR) who was formerly housed in the Administrative Segregation (AD-Seg) Unit of the Correctional Training Facility (CTF) X-Wing at the same point in time, for the same reasons as the plaintiff Lennis Roberson, GROOMING STANDARD violations. Soledad California.

2. While being held in AD-Seg the plaintiff Lennis L. Roberson and I (Omar S. Brown) personally discussed on a daily basis how plaintiff believed that our being held in AD-Seg for grooming violations (and C-Status) based on religious

1  principles was morally wrong, and possibly illegal. I am

2  competent to testify to the matters set forth herein, and if

3  called upon to do so, I would and could so testify. I submit

4  this declaration in support of Plaintiff's motion.

5      3. The plaintiff Lennis Roberson often discussed how

6  abusive and oppressive C-status was and how it (C-Status for

7  religious reasons) restricted him to; One-fourth maximum

8  canteen draw, access to Telephone calls on emergency basis

9  only, Yard access limited, No assess to any other recreational

10 or entertainment activities, No accrual of excused time off,

11 and No personal property packages.

12     4. Plaintiff would say to me he believed being housed in

13 the AD-Seg unit was unfair and an overly oppressive hardship

14 created and designed to crush his faith in his religion and to

15 isolate him emotionally and physically from his family and

16 friends, as well as mainline prisoners.

17     5. Plaintiff dicussed with me how he believed CDCR's staff

18 was denying him access to mainline dinning facilities and yard

19 was effectively isolating him from the general population

20 for his religious beliefs and principles.

21     6. Plaintiff often expressed a need to speak with his

22 teenage son and his sick and elderly mother over the phone,

23 but C-Status denied that privilege to him.

24     7. Plaintiff believes his relationship with his teenage

25 son was irreparably harmed by plaintiff being restricted from

26 phones -- emergency only telephone access, because of Grooming

27 Standard related C-Status, for religious reasons.

28

[2]

8. I personally observed how C-status rendered plaintiff unable to telephone his sick and elderly mother and other friends and family. Plaintiff's mother was placed in what was described to me as a nursing home shortly before plaintiff's removal from C-status. Plaintiff's mother remained in a nursing home until she died -- March 21, 2007.

9. Plaintiff said to me and anyone that would listen that, CDC's [CDCR] staff thinks they are more powerful than God. And, he believed they were attempting to pressure/coerce him into changing his belief by exposing him to progressive disciplinary measures.

10. Plaintiff told me that he believes his adherence to his religious beliefs/philosophy was the reason he was denied retroactive time credits.

11. I Omar S. Brown was also on C-status for religious reasons and was granted retoractive time credits that were denied to the plaintiff Lennis Roberson.

12. I Omar S. Brown have attached a CDC-602 grievance form and its attachments as Exhibit A. to show declarant was granted retroactive time credits which were denied to plaintiff Lennis Roberson.

I Omar S. Brown declare under penalty of perjury that the foregoing is true and correct. Executed at CTF-Central, Soledad, California, on July 14, 2007.

Omar S. Brown
CDC No. D-82332

[3]

# EXHIBIT "A"

EMERGENCY APPEAL

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

STATE OF CALIFORNIA

2ND LEVEL

Location  Institution/Parole Region  CTF

APR 6 2006

Log No. **06-00667**

Category **2**

DEPARTMENT OF CORRECTIONS

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| Omar Shariff Brown | D-82332 | UNA S | CW-209 |

A. Describe Problem: THIS GRIEVANCE IS SUBMITTED AS A EMERGENCY APPEAL PURSUANT TO TITLE 15. CCR. § 3084.7. (a). (1)., due to petitioner suffering Irreparable Harm through Spiritual, Psychological/Emotional, and Physical deprivation by said departmental staff's (i.e.: A.P.Kane, ~~E.C~~, J.M.Wiggins, W.B.Childress, Jeanne Woodford) religious persecution. The State Attorney General's document attached hereto from Bill Lockyer, which was submitted from the State of California's Department of Justice, and verified by Deputy Attorney General, Mr. Brian G. Walsh, that clearly & unambiguously establishes that CDC's present Inmate Grooming Standard CCR, §3062.(e).(h)., is illegal as stated – – –
(See: Supplemental Sheet & Exhibit

If you need more space, attach one additional sheet.

B. Action Requested: That petitioner be retroactively given back his A1A Status, that petitioner be properly reimbursed $4320.00 dollars for illicitly loss wages / compensatory damages, that petitioner be compensated $ 365,000.00 dollars for being maliciously & cruelly incarcerated and isolated in CTF's Adminsitrative Segregation for (one) year under religious persecution./ per Punitive Damages.

Inmate/Parolee Signature  Omar S. Brown  Date Submitted  02/01/06

C. INFORMAL LEVEL (Date Received 2-21-06)

Staff Response: Partially granted. A1A restored 2-21-06 effective 9th

Staff Signature: Verdadera, CCT  Date Returned to Inmate: 2-21-06

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Petitioner's lawful claims for loss wages reimburstment of #4320.00 dollars pursuant to compensatory damages, and #365,000.00 dollar punitive damages claim for malicious acts & blatant negligence by CTF administration and custody staff were not addressed nor resolved by the Informal level's response

Signature: Omar S. Brown  Date Submitted: 03/01/06

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

**03-00667**

FEB 2 - 2006
CTF APPEALS

MAR 2 2006
CTF APPEALS

RECEIVED

NMAE APPEALS BRANCH APR 25 2006 RECEIVED

1  by the California Department of Corrections/Rehabilitations and said State's Execu-

2  tive Chief Legal Counsel, Attorney Gen.-Bill Lockyer-[Re: Exhibit A], to be a blata-

3  nt violation of Federal Statutory Legislation § 42 U.S.C. 2000cc-1,2., better known

4  as RLUIPA-" Religious Land Use and Institutionalized Persons Act., which is/was af-

5  firmed and granted by the UNITED STATE'S SUPREME COURT decision, CUTTER v. WILKINSON

6  125 S.Ct. 2119, and 2128-2129 paragraph II, as finalized on May 31, 2005, which was

7  reaffirmed/supported by the Ninth(9th) Circuit ruling in WARSOLDIER v. WOODFORD 418

8  F.3d 989, on August 1st, 2005.

9  It must be substantially noted that U.S. Supreme Court rulings have the enforcement

10  and power of Mandatory Law, **and shall be implemented/enforced by all State & FEDERAL**

11  **employees, pursuant to the U.S. Constitution Article III-§1.** Therefore, every compe-

12  tent state official & officer whom willfully acts in a insubordinate manner through

13  defiance of said RLUIPA legislation or Departmental Regulations concerning CCR.Title

14  15.Div 3-§3044 C-Status, and §3062 Inmate Grooming Standards, is guilty of perpetrat-

15  ing a deliberately negligent and blatantly malicious arbitrary criminal act . To

16  Supercede the previously said Federal Legislation & Court Decisions stated by this

17  petitioner in this document, would undeniably mean that such CDC employees have/did

18  voluntarily relinquish all lawful rights to any type of Qualified immunity concerning

19  this matter, and can be Civilly & Criminally pursued/litigated for appropriate recom-

20  pensation.

21  Furthermore, as provided by petitioner's **'Life Progress Report'**-[Re: as Exhibit B.]

22  said appellant was illicitly & vindictively put on **C-Status 6/14/98** after he was

23  found guilty of only one (1) Administrative 115. This assertion is verified by the

24  CDC Deputy Director's july 03, 1998 departmental Memorandum to all CDC Wardens, as

25  was officially noted & recieved by CTF's previous/than Warden, Mrs. Linda J. Clarke,

26  on July 06, 1998-[Re: to Exhibit C.], and clearly establishes that said institution/

27  CTF correctional/administrative staff willfully & arbitrarily violated the said De-

28  partment's Rules & Regulations of CCR sections 3000 and 3062.subsection (n), which

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date:    **JUN 2 8 2006**

In re:    Brown, D-82332
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960

IAB Case No.: 0512174         Local Log No.: CTF 06-00667

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. G. Arceo, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that he is entitled to Work Group/Privilege Group (WG/PG) "A-1/A" status retroactive to September 22, 2000. The appellant cited the February 1, 2006, New Departmental Inmate Grooming Standards policy to support his argument. He contends this applies to him for the periods of time he was illegally placed on WG "C" status. He requests to be reimbursed $4,320.00 for loss wages during that timeframe; receive compensatory damages in the amount of $365,000.00 for being maliciously placed in the Administrative Segregation Unit for religious persecution and for punitive damages.

**II    SECOND LEVEL'S DECISION:** The reviewer found that on February 21, 2006, the Unit Classification Committee reviewed the appellant's case and granted WG/PG "A-1/A" retroactive beginning September 22, 2000. This is in compliance with current departmental policy.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is granted in part.

    **A. FINDINGS:** The required reviews of the appellant's appeal issue have been conducted. The institution has partially granted the appellant's request. To the Director's Level of Review, the appellant still complains that the dismissed CDC Forms 115, Rules Violation Reports (RVR) for Grooming Standards violations have not been removed from his central file pursuant to departmental policy and the institution does not verify this action has occurred. Therefore, the appellant has established a nexus between his original action and his request regarding removal of the RVRs. For this reason a modification of the decision reached by the institution is required. The appellant's request for monetary compensation is outside of the scope of the appeals process and therefore denied.

    **B. BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section (CCR): 3001, 3043, 3044, 3220, 3270, 3326

    **C. ORDER:** The Correctional Training Facility (CTF) shall in compliance with departmental policy ensure that the dismissed RVRs pertaining to this appeal issue are removed from the appellant's central file. The institution's actions in this matter shall comply with the CCR 3326(a)(2).

This issue was faxed to the Warden's office.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CTF
       Appeals Coordinator, CTF

# EXHIBIT    "A-2"
## Declaration of P.D. Shotwell

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Lennis L. Roberson | ) | Case No. C 07 3497 CRB(PR) |
| | ) | |
| Plaintiff | ) | DECLARATION OF P. DEON |
| | ) | SHOTWELL IN SUPPORT OF |
| v. | ) | PLAINTIFF'S OPPOSITION TO |
| | ) | DEFENDANTS' NOTICE AND |
| Jeanne Woodford, Director et el. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| Defendant[s] | ) | |

I Prince Deon Shotwell declare:

1. I am a prisoner of California Department of Corrections and Rehabilitation (CDCR).  I am housed in the Correctional Training Facility (CTF) at Soledad, California.

2. I Prince Deon Shotwell, have known the Plaintiff Lennis L. Roberson for about thirty (30) years.  Lennis L. Roberson and declarant have been cell-mates since early (January) 2006.  I have personally knowledge of the events described herein.  I am competent to testify to the matters set forth herein, and if called to do so, I would and could so testify.  I submit this declaration in support of Plaingiff's motion.

///

3. The plaintiff Lennis L. Roberson often discussed with me how abusive and oppressive he believed C-status was and how it (C-Status for religious belief) limited him to; One-fourth maximum canteen draw, access to Telephone calls on emergency basis only, Yard access limited, No assess to any other recreational or entertainment activities, No accrual of excused time off, and No personal property packages, which includes appliances such as televisions, CD-players and Typewriters (word processors).

4. Plaintiff has expressed to me that he believed being housed in the AD-Seg unit was unjust and oppressive at best.  Plaintiff says it was a situation created and designed to crush his faith in his religion and to isolate him emotionally and physically from his family and friends, as well as mainline prisoners.

5. Plaintiff has expressed to me that he believes, CDCR's staff denied him access to mainline dinning halls and the mainline yard was effectively isolating him from the general population for his religious beliefs and principles were a form of psychological torture administered as punishment.

6. Plaintiff has expressed to me his need to speak with his teenage son who he has not spoken with in several years, due to Grroming Standard related C-Status.  His sons mother died February 18, 2006 which caused him to lose all contact with his son -- including his whereabouts.

7. Plaintiff was also trying to deal with situations concerning his sick and elderly mother without the use of a phone, because C-Status precluded that privilege to him.

///

///

///

///

2.

8. Plaintiff is adamant about his belief that his relationship with his son was damaged because plaintiff was restricted from phones -- emergency only telephone access, because of Grooming Standard related C-Status, for religious belief.

9. I personally observed how C-status rendered plaintiff unable to telephone his son, sick and elderly mother and other friends and family. Plaintiff's mother was placed in a nursing home shortly before plaintiff's removal from C-status. Plaintiff's mother remained in a rest home until she died March 21, 2007.

10. On March 22, 2007 I personally observed that plaintiff was visibly shaken upon hearing of the death of his mother.

11. Plaintiff's mother was placed in the rest home prior to him being removed from C-Status, and his sons mother died three days after his removal from C-Status. Plaintiff expressed to me that he believes that his lost of contact with his family was directly connected to phone and other restrictions placed on plaintiff while on C-Status for religious reasons.

12. On several occasions I have heard plaintiff say, CDC (CDCR) thinks it is more powerful than God. And, plaintiff has additionally expressed to me that he believes they (CDCR) were attempting to coerce him into denouncing or modifying his belief by accessing progressive disciplinary measures against him.

13. Plaintiff said to me that he believes his religious beliefs/philosophy was the reason he was denied retroactive time credits. Plaintiff is Muslim.

14. I Prince Deon Shotwell, am of a different religious than the plaintiff. I was on C-status for religious reasons and was granted retroactive time credits that were denied to the plaintiff Lennis L.

///

3.

1   Roberson.

2       15. I Prince Deon Shotwell, have attached a 12/11/06 Modification

3   Order and a 12/12/06 CDC 128-G to this declaration as pages 1 and 2 of

4   Exhibit A to show declarant was granted retroactive credits for religion

5   related Grooming Standard violations and C-status -- which plaintiff

6   Lennis L. Roberson was denied.

7       I Prince Deon Shotwell declare under penalty of perjury that the

8   foregoing is true and correct.  Executed at CTF-Central, Soledad,

9   California, on July 16, 2007.

10

11                                    _Prince D. Shotwell_

12                                    Prince Deon Shotwell

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                            4.

# EXHIBIT "A"

NUMBER: H05927     NAME: SHOTWELL          HOUSING: CW-128U     CDC-128-G (Rev. 4/74)

Summary:  **SPECIAL**      PER MOD ORDER DATED 11-14-06 LOG# CTF-C-06-00593. CHANGE
          **REVIEW:**      WG/PG A2B TO A1A EFF: 9-22-00.

| | | |
|---|---|---|
| Custody: MED A | Release: MEPD 7-23-02<br>SUB #1 12-06 | Level: II |
| GPL/READ: HSD | Reclass: 9-1-07 | CS: 19 |
| Work<br>Group: A1 | Privilege<br>Group: A **Eff:** 9-22-00 | RPS: LIFER |

**COMMENTS:** SHOTWELL appeared before Unit III U.C.C. today for a Special Review.
**COMMITTEE ACTIONS:** PER MOD ORDER DATED 11-14-06 LOG# CTF-C-06-00593. CHANGE WG/PG
A2B TO A1A EFF: 9-22-00. Per Modification Order, Inmate SHOTWELL, H05927, WG/PG
A1A status is to be retroactive to 9-22-00, according to Memorandum dated 2-27-
06, Emergency Regulations Inmate Grooming Standards. Appeal #COR-02-0992 verifies
Religious beliefs. Inmate SHOTWELL participated in today's U.C.C. and
acknowledged his understanding of the Committee's actions. He stated that he
agreed with the Committee's actions. SHOTWELL was advised of his right to appeal
Committee actions.

CHAIRPERSON: I. Guerra FC          **Recorder:** K. Heinly CCI
**Panel:**  I. Guerra FC:    B. Villalobos CCI :    K. Heinly CCI /kh

Dist.:  C-File
        Inmate

DATE: 12-8-06          Classification:  **SPECIAL REVIEW**          Inst: CTF-C

Correctional Training Facility
Inmate Appeals Office

DEC 1 1 2006

## MODIFICATION ORDER

November 14, 2006

**AW-C**                          DUE DATE: **12/14/2006**

RE:SHOTWELL, H05927, CFCWT1000000128U
    CTF-C-06-00593
    CUSTODY/CLASS.

SCHEDULE APPELLANT FOR UCC

### I. Guerra, FC Unit III

Due Date: _12/11/06_

Please be informed that as a result of a Level II Decision, the above referenced appeal has been **DENIED**. Please complete this modification order to comply with the decision.

**Your area shall change Prince Shotwell's WG/PG A1A status to be retroactive to September 22, 2000, according to Memorandum dated 2/27/06, Emergency Regulations Inmate Grooming Standards. Appeal #COR-02-0992 verifies Religious beliefs.**

_(signature)_                          _11-14-06_

W. Cohen, Chief Deputy Warden (A) – North/South            Date
P. Barker, Chief Deputy Warden – Central

The modification was completed in the following manner:

On 12-8-06, the inmate was seen by
the Unit III Classification Committee
for a Special Review at that time,
Committee elected to change his
WG/PG to A1A effective 9-22-00.

(You must attach a copy of any documents proving compliance, such as CDC Form 128-G, Classification Chrono; CDC Form 128-C, Medical Chrono; CDC Form 115, Rules Violation Report, etc.)

Certified as completed by:

_(signature)_                    FC            12-8-06
Name (Signed)                   Title          Location

I. Guerra    FC    12-8-06
Name(Printed)         Date

**RECEIVED**

NOV 1 5 2006

**AW-CEN CTF**

# EXHIBIT    "A-3"
## Declaration of A. Alto

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Lennis L. Roberson | ) | Case No. C 07 3497 CRB(PR) |
| | ) | |
| Plaintiff | ) | DECLARATION OF ANTHONY |
| | ) | ALTO IN SUPPORT OF |
| v. | ) | PLAINTIFF'S OPPOSITION TO |
| | ) | DEFENDANTS' NOTICE AND |
| Jeanne Woodford, Director et el. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| Defendant[s] | ) | |

Anthony Alto declare:

1. I am a prisoner of California Department of Corrections and Rehabilitation (CDCR). I am housed in the Correctional Training Facility (CTF) at Soledad, California.

2. I Anthony Alto, have known the Plaintiff Lennis L. Roberson for approximately twenty (20) years. Lennis L. Roberson was housed in X-wing 236 of the AD-Seg Unit, and I (Anthony Alto) was housed in X-wing 235 of the AD-Seg Unit -- next door to the plaintiff for approximately one (1) year. I am competent to testify to the matters set forth herein, and if called upon to do so, I would and could so testify. I submit this declaration in support of Plaintiff's motion.

3. The plaintiff Lennis L. Roberson has often discussed with me how abusive and oppressive he believed C-status was and how C-Status for religious beliefs limited him to;

A. One-fourth maximum canteen draw,

B. access to Telephone calls on emergency basis only,

C. Yard access limited,

D. No access to any other recreational or entertainment activities,

E. No accrual of excused time off, and No personal property packages,

which includes appliances such as televisions, CD-players and

Typewriters (word processors).

4. Plaintiff personally expressed to me that he believed being housed in AD-Seg was unjust and oppressive.   Plaintiff has personally stated to me that he believes the progressive disciplinary situation related to grooming standard violations for religious reasons was created and designed to crush not only his faith in religion, but all religious faith, and to isolate him emotionally, spiritually, and physically from his family and friends, as well as mainline prisoners and other advocates of his faith for exercising his religious beliefs.

5. Plaintiff personally expressed to me that he believes, California Department of Corrections and Reabilitation (CDCR) staff denied him access to mainline dinning halls and the mainline yard was effectively isolating him from the general population for adhering to his religious beliefs and principles were a form of psychological torture administered as punishment.

6. I personally observed plaintiff being restricted to ten (10) hours of yard a week on the X-wing AD-Seg yard.

2.

7. I never saw or heard plaintiff pass my cell going to the mainline yard or dining halls.  To the best of my knowledge the plaintiff ate in his cell like the rest of us housed in X-wing.

8. Plaintiff personally expressed to me he was having some difficulties with his son, and needed to speak with his teenage son who he has not spoken with in several years, due to Grooming Standard related C-Status.  His sons mother died February 18, 2006 which caused plaintiff to lose all contact with his son -- even as to where he was living at.

9. Plaintiff personally told me he was trying to deal with situations concerning his sick and elderly mother without the use of a phone, because C-Status precluded that privilege to him.

10. Plaintiff sincerely believes that his relationship with his son is damaged if not destroyed, because plaintiff was restricted from phone access, because of Grooming Standard related C-Status, for religious reason.

11. I personally observed how C-status rendered plaintiff unable to telephone his son, sick and elderly mother and other friends and family. Plaintiff's mother was placed in a nursing home shortly before plaintiff's removal from C-status.  Plaintiff's mother remained in a rest home until she died March 21, 2007.

12. Plaintiff's mother was placed in a rest home prior to plaintiff's removed from C-Status, and plaintiff's son's mother died three days after plaintiff's removal from C-Status.  Plaintiff personally told me — he believes that his lost of contact with his family was directly connected to phone and other restrictions placed on plaintiff while on C-Status for religious reasons.

3.

13. On several occasions I have heard plaintiff say, CDC (CDCR) thinks it is more powerful than GOD the Creator. And, plaintiff has also personally told me that he believes CDCR's staff were attempting to coerce him into denouncing or modifying his belief by accessing more progressive disciplinary measures against him and other religious people.

14. Plaintiff personally said to me that he believes his religious beliefs/philosophy resulted in plaintiff being denied retroactive time credits. The plaintiff is a Muslim.

15. I Anthony Alto, am of a different religious faith than plaintiff. I was on C-status for religious reasons and was granted retroactive time credits that plaintiff Lennis L. Roberson alleges were denied to him.

16. I Anthony Alto have documents attached as Exhibit A. to this declaration to show declarant was granted retroactive time credits -- which plaintiff Lennis L. Roberson alleges he was denied.

I Anthony Alto declare under penalty of perjury that the foregoing is true and correct. Executed at CTF-Central, Soledad, California, on July 29, 2007.

Anthony Alto

4.

# EXHIBIT "A"

EXHIBIT    "A"

NUMBER: D60165    NAME: ALTO                HOUSING: CW 120U    CDC-128-G (Rev. 4/74)

Summary:    **SPECIAL REVIEW:**    RESTORE 30 DAYS LOC DIV. 'F' DTD. 5-10-99 LOG #F3-99-
            (Absentia)          091 "FAILURE TO COMPLY W/ GROOMING STANDARDS" REMOVE
                                RVR DTD. 2-5-99, 3-11-99 & 5-10-99 (GROOMING
                                STANDARDS) PER RLUIPA.

  Custody: MED A          Release:   MEPD 5-13-10        Level: II
GPL/READ: 9.6/12.0        Reclass:   7-1-07              CS: 19
    Work                  Privilege
    Group: A1               Group: A EFF: 9-22-00        RPS:  LIFER

**COMMENTS:** Per subject's request, Alto Central File was reviewed, in absentia, by
Unit III U.C.C. today for a Special Review. **COMMITTEE ACTIONS:** Restore 30 days
loss of credit Div.'F' dated 5-10-99 Log #F3-99-091 "Failure To Comply With
Inmate Grooming Standards". Remove RVR's dated 2-5-99, 3-11-99 and 5-10-99 per
Religious Land Use and Institutional Persons Act (RLUIPA). The inmate is advised
that credits shall not be restored in an amount rendering him overdue for
release. If PC 3058.6 and/or PC 3058.8 apply, there will be no change within 45
days of release per AB 2294. Inmate Alto did not participate in today's U.C.C.
for the following reason(s):  Committee's action is non-adverse and the action
was taken per subject's request. No further casework needs were required at this
time. Alto was in prior agreement with today's committee and was informed of his
appeal rights.

CHAIRPERSON: D.Carnazzo, PC(A) DE                  Recorder: T. Verdesoto, CCI
Panel:  D.Carnazzo, PC(A) :        L.Vucina, CCI   :  T. Verdesoto /tv

Dist.:    C-File
          Inmate

DATE: 8-15-06        Classification:  SPECIAL REVIEW        Inst:  CTF-C

# EXHIBIT   "A-4"
## Declaration of H. Little

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

Lennis L. Roberson              )     Case No. C 07 3497 CRB(PR)
                                )
        Plaintiff               )     DECLARATION OF HARRY
                                )     LITTLE IN SUPPORT OF
        v.                      )     PLAINTIFF'S OPPOSITION TO
                                )     DEFENDANTS' NOTICE AND
Jeanne Woodford, Director et el.)     MOTION FOR SUMMARY JUDGMENT
                                )
        Defendant[s]            )
_____ )

        Harry Little declare:

        1. I am a prisoner of California Department of Corrections
and Rehabilitation (CDCR).  I am housed at the Correctional
Training Facility (CTF) at Soledad, California.

        2. I Harry Little, have known the Plaintiff Lennis L.
Roberson for over ten (10) years. The plaintiff and I (the
declarant Harry Little) were cell-mates housed in D-wing 317
of CTF Central.  I am competent to testify to the matters
set forth herein, and if called upon to do so, I would and
could so testify.  I submit this declaration in support of

Plaintiff's motion.

3. The plaintiff Lennis L. Roberson and the declarant would often discuss a variety of topics which included politics and religion.  The plaintiff explained to me how abusive and oppressive he believed C-status was.

4. I the declarant Harry Little personally saw that C-Status severely limited his access to thing that most prisoners take foregranted;

   a. I personally observed that plaintiff could only recieve One-fourth the maximum canteen draw.

   b. While on C-status I never personally observed or heard anyone say they observed plaintiff using the Telephones.

   c. I personally observed that plaintiff's Yard access was restricted to weekdays 13:00 hours to 15:00 hours and no weekends or holidays.

   d. I personally observed that plaintiff had no access to any recreational or entertainment activities while on C-status.

   e. I personally observed while on C-status plaintiff never received personal property packages, which includes but not limited to appliances such as televisions, CD-players and Typewriters (word processors) etc.

4. On many occasions plaintiff personally expressed that he believed his being housed in AD-Seg was unjust and oppressive.  Plaintiff has stated to me that he believes the

2.

progressive disciplinary measures related to grooming standard

violations for religious reasons were created and designed to

destroy his faith in religion, and to isolate him emotionally,

spiritually, and physically from his family and friends, as

well as mainline prisoners and other advocates of his religious

faith -- for exercising his religious beliefs.

5. Plaintiff constantly said to me personally, and

generally that the Department of Corrections (CDC) staff

thought they were more powerful than God.

6. On or about December 21, 2005 I personally observe

Correctional Officer (C/O) J. Childers at the open door of cell

door of 317 of D-wing.

7. On or about December 21 2005 while C/O J. Childers was

at the opened door of cell 317 D-wing I personally heard and

observed C/O J. Childers tell plaintiff in what I believe to be

an unnecessarily aggressive manner and tone that, he had to

move from D-wing 317 to an upper bunk in C-wing 133 because

plaintiff was on C-status.

8. In response to C/O J. Childers I personally heard the

plaintiff calmly and respectfully present a document (128-C

medical chronology) from the medical department stating he

should be housed in a lower bunk.

9. C/O J. Childers left and returned a short time later

with the Unit III Correctional Sergeant B.R. Peoples. As

plaintiff was explaining plaintiff's position to the sergeant

B.R. Peoples, I personally heard and observed C/O J. Childers

interrupt plaintiff in mid-sentence and say it doesn't matter

3.

1  all C-status inmates have to be moved to C-wing.  And, then C/O

2  J. Childers went on to state in an aggressive and agitated

3  way, "either you are going to move on your own or we will

4  move you."

5      10. I personally observed and assisted plaintiff move to

6  C-wing 133 upper later that day.

7      11. I Harry Little the declarant was housed in D-wing 317

8  with the plaintiff and at that time I did not have any

9  documentation recommending that I be housed on a lower bunk.

10     12. I Harry Little have affixed hereto a "Comprehensive

11 Accommodation Chrono" (CDC-7410) attached hereto and marked as

12 Exhibit A that shows, I the declarant in this declaration

13 received documentation which recommended that I be housed in a

14 lower bunk.

15     13. Declarant did not have or receive documentation to

16 receive a lower bunk until (November 30, 2006) approximately a

17 year after plaintiff had been moved to C-wing 133 upper.

18     I Harry Little declare under penalty of perjury that the

19 foregoing is true and correct.  Executed at CTF-Central,

20 Soledad, California, on August 12, 2007.

21

22

23                              Harry E. Little
                                Harry Little

24

25

26

27

28

                              4.

# EXHIBIT "A"

EXHIBIT　　"A"

STATE OF CALIFORNIA                                                                                    DEPARTMENT OF CORRECTIONS

# COMPREHENSIVE ACCOMMODATION CHRONO

**INSTRUCTIONS**: A physician shall complete this form if an inmate requires an accommodation due to a medical condition. Circle P if the accommodation is to be permanent, or T if the accommodation is to be temporary. If the accommodation is temporary, write the date the accommodation expires on the line. A new form shall be generated when a change to an accommodation is required or upon renewal of a temporary accommodation. Any new form generated shall include previous accommodations, if they still apply. Chronos indicating permanent accommodations shall be reviewed annually. This form shall be honored as a permanent chrono at all institutions.

## A. HOUSING

**None**

| | | |
|---|---|---|
| 1. Barrier Free/Wheelchair Access | P / T _____ | 4. Bottom Bunk | P / T _____ |
| 2. Ground Floor Cell | P / T _____ | 5. Single Cell (See 128-C date: _____ ) | P / T _____ |
| 3. Continuous Powered Generator | P / T _____ | 6. Permanent OHU / CTC (circle one) | P / T _____ |
| | | 7. Other _____ | P / T _____ |

## B. MEDICAL EQUIPMENT/SUPPLIES

**None**

| | | |
|---|---|---|
| 8. Limb Prosthesis | P / T _____ | 16. Wheelchair: (type) _____ | P / T _____ |
| 9. Brace | P / T _____ | 17. Contact Lens(es) & Supplies | P / T _____ |
| 10. Crutches | P / T _____ | 18. Hearing Aid | P / T _____ |
| 11. Cane: (type) _____ | P / T _____ | 19. Special Garment: (specify) _____ | P / T _____ |
| 12. Walker | P / T _____ | 20. Rx. Glasses: _____ | P / T _____ |
| 13. Dressing/Catheter/Colostomy Supplies | P / T _____ | 21. Cotton Bedding | P / T _____ |
| 14. Shoe: (specify) _____ | P / T _____ | 22. Extra Mattress | P / T _____ |
| 15. Dialysis Peritoneal | P / T _____ | 23. Other _____ | P / T _____ |

## C. OTHER

**None**

24. **Attendant to assist with meal access** P / T _____
and other movement inside the institution.

Attendant will not feed or lift the inmate/patient
or perform elements of personal hygiene.

25. **Wheelchair Accessible Table** P / T _____

| | |
|---|---|
| 26. Therapeutic Diet: (specify) _____ | P / T _____ |
| 27. Communication Assistance | P / T _____ |
| 28. Transport Vehicle with Lift | P / T _____ |
| 29. Short Beard | P / T _____ |
| 30. Other _____ | P / T _____ |

## D. PHYSICAL LIMITATIONS TO JOB ASSIGNMENTS

Based on the above, are there any physical limitations to job assignments?   ☐ Yes   ☐ No

If yes, specify: _____

| INSTITUTION C T F | COMPLETED BY (PRINT NAME) C. SINN | TITLE M.D. |
|---|---|---|
| SIGNATURE | DATE 11/30/06 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
| HCM/CMO SIGNATURE | DATE 11-30-06 | P14390 |
| APPROVED (list the number of items approved) | | LITTLE |
| DENIED (list the number of items denied) | | |

COMPREHENSIVE ACCOMMODATION
CHRONO

CDC 7410 (08/04)

# EXHIBIT    "A-5"
# Declaration of R. Laudermill

1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11
12  Lennis L. Roberson              )      Case No. C 07 3497 CRB(PR)
                                    )
13        Plaintiff                 )      DECLARATION OF REGINALD
                                    )      LAUDERMILL IN SUPPORT OF
14        v.                        )      PLAINTIFF'S OPPOSITION TO
                                    )      DEFENDANTS' NOTICE AND
15  Jeanne Woodford, Director et el.)      MOTION FOR SUMMARY JUDGMENT
                                    )
16  ___Defendant[s]_____ )

17
18      Reginald Laudermill declare:

19      1. I am currently in the custody of the California Department of

20  Corrections and Rehabilitation (CDCR).  I am a Muslim inmate currently

21  housed at the Correctional Training Facility (CTF) at Soledad, California.

22      2. I am in good standing with the general Muslim community, as well

23  as the Muslim American community under the leadership of W.D. Mohammad.  I

24  have been a Muslim for approximately six (6) years.  I am competent to

25  testify and have personal knowledge as to the matters set forth in this

26  declaration and if called upon to do so, I would and could so testify.

27
28

3. I have a formal study of the Islamic religion. IT is my sincere belief to obey ALLAH (GOD), The Holy Qur'an and Prophet Muhammad's (S.A.W.) Sunnah of 1427 years ago. I am the petitioner in the order of the Superior court of California County of Monterey (attached hereto as Exhibit A). And, will testify to the facts that the exhibit attached (A thru F) are authentic. And, from 2000 to 2004 Muslim inmates and myself were deprived of all religious artifacts including, but not limited to, prayer oils, prayer rugs, and kuffi caps.

4. I declare under the penalty of perjury that the foregoing is true and correct. Executed at Soledad, California.

Date: 9-20-07

_Reginald Laudermill (H-24103)

# EXHIBIT "A"

SUPERIOR COURT OF CALIFORNIA

COUNTY OF MONTEREY

**FILED**

DEC - 8 2003

SHERRIT PEDERSEN
CLERK OF THE SUPERIOR COURT
MARSHA BOYER DEPUTY

In re                                    )    Case No.: HC 4656
                                         )
    Reginald Laudermill (H 24103)        )    ORDER
                                         )
        On Habeas Corpus.                )
─────────────────────────────────────────)

Petitioner complains the Correctional Training Facility (CTF) officials at Soledad have

denied him specific religious materials pertaining to the Islamic religion.  He contends prison

officials are violating the Religious Land Use and Institutionalized Persons Act of 2000, 42

U.S.C. §2000cc-1(a), the Free Exercise Clause of the First Amendment, and the Equal

Protections Clause of the Fourteenth Amendment.  In specific, Petitioner is denied the ability to

acquire from an approved vendor prayer oils as allowed under CTF Operational Procedure #42.

The Court has reviewed all exhibits, responses, and Petitioner's traverse.  Although the

traverse may allege new, additional facts, attempts to introduce additional claims or wholly

different factual bases for those claims do not expand the scope of the proceeding.  *People v.*

*Duvall* (1995) 9 Cal. 4th 464, 478.  In the traverse before this Court, Petitioner raised facts to the

related claim of being unable to obtain materials cited Operational Procedure #42.  Petitioner, a

member of the Islamic faith, requests <u>all</u> of the materials on Operational Procedure #42 from an

approved vendor.  Respondents explicitly state by January 4, 2004, all materials will be provided

to those situated like Petitioner.  The Court, under California Rules of Court 4.551(h), extends

time to rule on the Petition.  The Court directs Respondents through the Attorney General's

Office to provide a supplemental informal response which addresses the <u>full</u> compliance with all

1

of the materials on Operational Procedure #42 by January 8, 2004.  Thereafter, Petitioner may

file a reply within 15 days of receipt of the supplemental response.


Dated:  November 25, 2003

Hon. Robert F. Moody

2

# CERTIFICATE OF MAILING

## C.C.P. SEC. 1013a

I do hereby certify that I am not a party to the within stated cause and that on

**DEC - 8 2003** _____ I deposited true and correct copies of the following document:

ORDER in sealed envelopes with postage thereon fully prepaid, in the mail at Salinas,

California, directed to each of the following named persons at their respective addresses as

hereinafter set forth:

Bill Lockyear
California Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Attn: Correctional Law Section

Reginald Laudermill
H 24103
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960-0689

Dated: **DEC - 8 2003**                    SHERRI L. PEDERSEN,
                                           Clerk of the Court

                                           By: _____
                                           Deputy        MARSHA BOYER

3

1   of the materials on Operational Procedure #42 by January 8, 2004.  Thereafter, Petitioner may

2   file a reply within 15 days of receipt of the supplemental response.

3

4   Dated:  November 25, 2003

5

6                                                            _____
                                                             Hon. Robert F. Moody

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

2