1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  MICHAEL W. JORGENSON
   Supervising Deputy Attorney General
5  CHRISTOPHER M. YOUNG, State Bar No. 238532
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102-7004
7   Telephone: (415) 703-5553
    Fax: (415) 703-5843
8   Email: Chris.Young@doj.ca.gov

9  Attorneys for Defendants Childers, Gibbs-Battenfeld,
   Guerra, and Woodford

10

11

12                    IN THE UNITED STATES DISTRICT COURT

13                FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                         SAN FRANCISCO DIVISION

15  **LENNIS L. ROBERSON,**                    CASE NO. C 07-3497 CRB (PR)

16                              Plaintiff,     **DEFENDANTS' REPLY TO
                                               PLAINTIFF'S OPPOSITION**
17      v.                                     **TO DEFENDANTS' MOTION
                                               FOR SUMMARY JUDGMENT**
18  **JEANNE WOODFORD, et al.,**

19                            Defendants.

20

21                       **PRELIMINARY STATEMENT**

22      Plaintiff Lennis Roberson (Plaintiff) is an inmate at the Correctional Training Facility,

23  Soledad. Plaintiff received grooming standard violations in 1998, and was deemed a "program

24  failure." In 2006, the California Department of Corrections and Rehabilitation (CDCR) adopted

25  new grooming policies to comply with the Religious Land Use and Institutionalized Persons Act

26  (RLUIPA), and offered to restore lost behavioral credits to inmates who were found guilty of

27  grooming violations based on their religious beliefs if the inmates could verify the fact that their

28  nonconformance was based on religion. Plaintiff presented no evidence to CDCR officials that

Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. Summ. J.          *Roberson v. Woodford, et al*
                                                             Case No. C 07-3497 CRB (PR)

1  his non-conformance with grooming policies was based on religious beliefs, therefore he was

2  ineligible for restoration of behavioral credits.

3      Plaintiff's Complaint alleges that Defendants Childers, Gibbs-Battenfeld, Guerra, and

4  Woodford[1] (Defendants) violated Plaintiff's right to the free exercise of his religion under the

5  First Amendment and RLUIPA, as well as Plaintiff's right to equal protection under the

6  Fourteenth Amendment.  Plaintiff is seeking time credit restoration for grooming standard

7  violations he received in 1998, damages, and an injunction to rectify alleged constitutional

8  violations.  Plaintiff's claims against Defendants are based solely on Defendants' alleged acts and

9  omissions for events occurring at the Correctional Training Facility in Soledad.

10      Plaintiff did not inform prison officials that his grooming violations were connected to his

11  religious faith.  At the disciplinary hearings in 1998, Plaintiff was found guilty but made no

12  mention of his religious convictions at the hearings.  Nor did Plaintiff submit any inmate appeals

13  challenging the discipline at that time.  Instead, Plaintiff waited seven years to submit an inmate

14  appeal.  Just before Plaintiff submitted the appeal, new regulations and policies were enacted

15  entitling inmates to credit restoration if they could prove they received a grooming standard

16  violation based upon religious convictions.

17      Plaintiff cannot show that prison officials enforced the grooming standard in violation of his

18  rights under the First and Fourteenth Amendments and RLUIPA.  Therefore, Defendants are

19  entitled to judgment as a matter of law.

20                              **ARGUMENT**

21                                  **I.**

22  **PLAINTIFF DOES NOT PRESENT ADMISSIBLE EVIDENCE SHOWING A**
    **GENUINE ISSUE FOR TRIAL; THEREFORE DEFENDANTS ARE**
23  **ENTITLED TO SUMMARY JUDGMENT.**

24  **A.    Standard of Review.**

25  Plaintiff, in his opposition to Defendants' motion for summary judgment, must present

26  _____

27      1. Plaintiff also names Defendants Kane, Wiggins, Childress, Sumlin, and Navarro.  To the
    best knowledge of the Attorney General's Office, these Defendants have not been served in this suit,
28  and no appearance is made on their behalf.

Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. Summ. J.                    *Roberson v. Woodford, et al*
                                                                       Case No. C 07-3497 CRB (PR)

1 | admissible evidence showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Brinson v.*
2 | *Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).

3 |      Plaintiff cannot create a genuine issue of material fact by simply making assertions in his
4 | opposition. *S.A. Empresa De Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F. 2d
5 | 1235, 1238 (9th Cir. 1982). Summary judgment is appropriate if Plaintiff "fails to make a
6 | showing sufficient to establish the existence of an element essential to that party's case, and on
7 | which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317,
8 | 322 (1986). Summary judgment cannot be avoided by relying solely on conclusory allegations
9 | unsupported by factual data. *Taylor v. List*, 880 F. 2d 1040, 1045 (9th Cir. 1989). Normally the
10 | court draws all justifiable inferences in the non-movant's favor at the summary judgment stage,
11 | but in disputed matters of professional judgment the court's inferences must accord deference to
12 | the views of prison authorities. *See Beards v. Banks*, 126 S. Ct. 2572, 2578 (2006).

13 |      It is not the task of the district court to scour the record in search of a genuine issue of
14 | triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the
15 | burden of identifying with reasonable particularity the evidence that precludes summary
16 | judgment. *Id.* If the nonmoving party fails to do so, the district court may properly grant
17 | summary judgment in favor of the moving party. *See id.*; *see also Carmen v. San Francisco*
18 | *Unified School Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001) (even if there is evidence in the
19 | court file which creates a genuine issue of material fact, a district court may grant summary
20 | judgment if the opposing papers do not include or conveniently refer to that evidence). Although
21 | the district court has the discretion to consider materials in the court file not referenced in the
22 | opposing papers, it need not do so. *Id.* at 1029. "The district court need not examine the entire
23 | file for evidence establishing a genuine issue of fact." *Id.* at 1031.

24 |      Applying these standards, as discussed below, no material issues of fact exist which would
25 | support Plaintiff's claim that Defendants violated Plaintiff's constitutional rights.

26 | **B.    Plaintiff Produces No Evidence Creating a Genuine Issue of Material**
       **Fact for Trial.**
27 |

28 |      Plaintiff presents numerous declarations in support of his opposition to Defendants'

Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. Summ. J.                    *Roberson v. Woodford, et al*
                                                                       Case No. C 07-3497 CRB (PR)

1    summary-judgment motion, yet does not present any admissible evidence supporting his

2    assertion that Defendants have violated his constitutional rights.

3        1.    **Plaintiff Produces No Evidence Supporting His Allegation that Defendants Interfered with His Rights Under the First Amendment and RLUIPA; He Is Not Entitled to Restoration of Behavioral Credit.**

5        In his declarations supporting the opposition, Plaintiff attempts to show that Defendants

6    substantially burdened his religious exercise by enforcing grooming policies even though they

7    knew he was a practicing Muslim.  An inmate's religious exercise is substantially burdened

8    "'where the state . . . denies [an important benefit] *because of conduct mandated by religious*

9    *belief*, thereby putting substantial pressure on an adherent to modify his behavior and to violate

10   his belief.'"  *Warsoldier v. Woodford*, 418 F.3d 989, 996 (9th Cir. 2005) (emphasis added).

11   "Once the plaintiff establishes that the challenged state action substantially burdens his religious

12   exercise, the government bears the burden of establishing that the regulation serves a compelling

13   government interest and is the least restrictive means of achieving that interest."  *Shakur v.*

14   *Schriro*, 514 F.3d 878, 889 (9th Cir. 2008).  In *Shakur* and *Warsoldier*, inmates made prison

15   officials aware of their religious convictions.  *Warsoldier*, 418 F.3d at 992; *Shakur*, 514 F.3d at

16   882.  But here, Plaintiff does not present any documentary evidence showing that Defendants

17   knew of Plaintiff's religious beliefs, nor does he explain why he waited until after the credit-

18   restoration policy was enacted to submit an inmate appeal on the issue.  Presumably, if he felt

19   that his religious convictions were challenged by institutional policy and the 1998 disciplinary

20   violations, he should have submitted an inmate appeal at that time, rather than waiting until after

21   grooming policies were changed.

22       Plaintiff asserts that he told several officials that his noncompliance with grooming

23   policies was due to religious convictions, and that documentation maintained by prison officials

24   is incomplete.  (Decl. Roberson A-7(c) at ¶¶ 4-5.)  Plaintiff alleges that he told Defendant Gibbs-

25   Battenfeld that he was in violation of policy due to religious reasons, but he does not state that he

26   talked to any other Defendant about his religious beliefs.  (Decl. Roberson A-7(d) at ¶ 4.)

27   Defendant Gibbs-Battenfeld states that Plaintiff never told her he was noncompliant based on

28   religious beliefs.  (Decl. Gibbs-Battenfeld ¶ 4.)  But, assuming that Plaintiff's version of the facts

Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. Summ. J.            *Roberson v. Woodford, et al*
Case No. C 07-3497 CRB (PR)

1    is true, Defendant Gibbs-Battenfeld was not notified until sometime in August 2005 that Plaintiff

2    was in violation of grooming policy based on his religious convictions. (Decl. Roberson A-7(d)

3    at ¶¶ 4-5.) Thus, Plaintiff's declaration only verifies that he asserted a religious basis

4    approximately five months before disciplinary restrictions were removed in January 2006.

5    Furthermore, within the five-month period between Plaintiff's alleged oral notice to Defendant,

6    and the grooming policy change, Plaintiff refused to attend a classification committee convened

7    for the purpose of reviewing Plaintiff's disciplinary status based on grooming. (Decl. Young Ex.

8    D at 24.)

9         CDCR policy relating to grooming regulations was outlined by Director Dovey in

10   conjunction with emergency regulations promulgated on January 17, 2006. Director Dovey

11   ordered that any inmate deemed a program failure due to grooming violations should be removed

12   from program failure status effective January 17, 2006. (Decl. Young Supp. Defs.' Mot. Summ.

13   J., Ex. G.) Director Dovey instructed that any inmate who had been found guilty of a disciplinary

14   violation based on grooming standards, and who violated the standard "based on previously

15   stated religious beliefs" would receive full restoration of credits lost for violations occurring on

16   or after September 22, 2000, the day that RLUIPA was passed. (*Id.*) Credit restoration would be

17   granted if an inmate had disciplinary violation following the enactment of RLUIPA, and if that

18   inmate could prove that noncompliance was based upon religious beliefs. (*Id.*) Proof of

19   noncompliance based on religious beliefs could include: documented statements at a disciplinary

20   hearing, investigative employee reports, inmate appeals, classification chronologicals, other

21   documents in the inmate's central file, or any other verifiable document. (*Id.*) Inmates who

22   could not verify their decision to violate the grooming standards based on religious beliefs were

23   not entitled to have their credit restored. (*Id.*)

24        Plaintiff produces no evidence in his opposition that he ever presented Defendants with

25   proof that his violations were "based on previously stated religious beliefs." Even Plaintiff's

26   alleged statement to Defendant Gibbs-Battenfeld in August 2005 relating to his religious beliefs

27   would not have been sufficient to grant Plaintiff restoration of behavioral credits under CDCR

28   policy. As such, Plaintiff presents no genuine issue for trial, and Defendants are entitled to

Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. Summ. J.                    *Roberson v. Woodford, et al*
                                                                       Case No. C 07-3497 CRB (PR)

1 | judgment.

2 | **2.    Declarations of Brown, Shotwell, and Alto.**

3 Plaintiff asserts that he can prove his rights under the Fourteenth Amendment were

4 violated, because other inmates at the Correctional Training Facility received restoration of

5 behavioral credits, even though their violations of grooming standards occurred before

6 September 22, 2000.  (Pl.'s Opp'n 3.)  The Equal Protection Clause of the Fourteenth

7 Amendment commands that no State shall "'deny to any person within its jurisdiction the equal

8 protection of the laws,' which is essentially a direction that all persons similarly situated should

9 be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) *(quoting*

10 *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  But, the declarations of inmates Brown, Shotwell, and

11 Alto do not provide adequate evidence showing that prison officials failed to uniformly apply

12 prison grooming policies.

13 The declarations submitted by Plaintiff do not create a genuine issue of fact on the issue

14 of equal treatment.  Inmate Brown asserts in his declaration that his behavioral credits were

15 restored.  (Decl. Brown ¶ 11.)  But Brown does not divulge whether or how he verified to prison

16 officials that his violations were based on religious convictions.  Nor does Brown affirm the date

17 of the disciplinary violations, and whether he received any discipline following September 22,

18 2000.  Instead, Brown attaches an inmate appeal to the declaration, which shows that unknown

19 Correctional Training Facility officials reviewed Brown's file on February 21, 2006, and found

20 that he was entitled to retroactive behavioral credits beginning September 22, 2000.  (*Id.* Ex. A.)

21 The declaration does not present a triable issue of fact, because it is unclear what evidence the

22 classification committee relied on in restoring Brown's behavioral credits.  (*Id.*)  Inmate Alto was

23 also granted thirty days of retroactive credits, but like Brown's declaration, Alto does not set out

24 any facts sufficient to enable the Court to find that Plaintiff was treated any differently.  (Decl.

25 Alto ¶¶ 15-16.)

26 Inmate Shotwell's declaration shows that Shotwell and Plaintiff were not similarly

27 situated, in that Shotwell was able to verify that his violations of grooming standards were based

28 on religious convictions.  (Decl. Shotwell ¶ 15.)  The Correctional Training Facility review

Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. Summ. J.    *Roberson v. Woodford, et al*    Case No. C 07-3497 CRB (PR)

6

1   committee noted that Shotwell verified the existence of religious beliefs in inmate appeal COR-

2   02-0992. (*Id.* Ex. A.) Shotwell received restoration of credits because he could provide the

3   classification committee with verification of his religious convictions, whereas Plaintiff cannot

4   provide any proof whatsoever.

5          Plaintiff has not produced any admissible evidence showing that he was similarly situated

6   to other inmates, yet denied the same benefits. As shown above, Plaintiff has not produced any

7   evidence that he submitted proof to Defendants that he was entitled to credit restoration. Thus,

8   no genuine issue of fact exists, no reasonable jury could find in favor of Plaintiff on the evidence

9   in the record, and Defendants are entitled to judgment.

10                                                **II.**

11               **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

12         The defense of qualified immunity applies to "government officials performing

13  discretionary functions," who "generally are shielded from liability for civil damages insofar as

14  their conduct does not violate clearly established statutory or constitutional rights of which a

15  reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation

16  omitted). The rule of qualified immunity "provides ample protection to all but the plainly

17  incompetent or those who knowingly violate the law." *Burns v. Reed*, 500 U.S. 478, 494-495

18  (1991) (citation omitted).

19         In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a sequence of

20  questions to be considered in determining whether qualified immunity is applicable. First, a

21  Court must consider this threshold question: "Taken in the light most favorable to the party

22  asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

23  right?" *Id.* at 201. If no constitutional right was violated under the alleged facts, the inquiry ends

24  and defendants prevail. *Id.* If, however, "a violation could be made out on a favorable view of

25  the parties' submissions," then the next sequential step is to ask whether the right was clearly

26  established. *Id.*

27  ///

28  ///

Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. Summ. J.                    *Roberson v. Woodford, et al*
                                                                       Case No. C 07-3497 CRB (PR)

**A.    Defendants Are Entitled to Qualified Immunity Because Plaintiff Failed to Show Defendants' Actions Violated a Constitutional Right.**

The first step under *Saucier* is to determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. As discussed in detail in section I above, Plaintiff fails to show that Defendants' actions violated his constitutional rights.

**B.    Defendants Are Entitled to Qualified Immunity Because It Would Not Have Been Clear to a Reasonable Official that the Conduct at Issue was Unlawful.**

Assuming arguendo that a constitutional violation could be found, then the next step under *Saucier* is to ask whether the right violated was a clearly established right. More specifically, the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

The Supreme Court has held that to deny summary judgment any time a material issue of fact remains on a claim could undermine the goal of qualified immunity to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Saucier*, 533 U.S. at 202 (citing *Harlow*, 457 U.S. at 818). In determining whether Defendants violated clearly established law, the "salient question" is whether the state of the law at the time provided "fair warning" that their conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 740 (2002). The question must focus on "what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." *Saucier*, 533 U.S. at 208.

Assuming that Plaintiff violated grooming standards based on religious convictions, it was not clearly established that restrictions on an inmate's religious exercise must satisfy the "compelling governmental interest" and "least restrictive means" tests until the Supreme Court upheld RLUIPA in *Cutter v. Wilkinson*, 544 U.S. 709 (2005). Additionally, Defendants would not have been aware of the impact on the CDCR until January 17, 2006, when the CDCR adopted emergency regulations related to grooming standards. Cal. Code Regs. tit. 15, § 3062. It

Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. Summ. J.                    *Roberson v. Woodford, et al*
                                                                                            Case No. C 07-3497 CRB (PR)

8

1   is undisputed that Plaintiff's privilege status was adjusted effective January 17, 2006.

2       As soon as the CDCR promulgated regulations in accordance with RLUIPA, prison

3   officials at the Correctional Training Facility began to review cases of inmates who had been

4   charged with a disciplinary violation based on grooming. (Decl. Gibbs-Battenfeld ¶ 7.) Plaintiff

5   could not verify through any document in his central file, any inmate appeal, or any other

6   evidence whatsoever that he had violated grooming policies based on religious convictions. In

7   fact, the evidence before the classification committee included Plaintiff's statements at the

8   grooming policy violation hearings, where Plaintiff merely said "it doesn't matter," and "I don't

9   care to address that." (Compl. Exs. A, B, C.) It would not have been clear to a reasonable

10   official that failure to restore behavioral credits based on the lack of evidence violated a clearly

11   established right, if in fact it did.

## CONCLUSION

13       Defendants are entitled to judgment because Plaintiff has not produced evidence

14   supporting every essential element of his claims under the First and Fourteenth Amendments,

15   and under RLUIPA. As outlined in Defendants' summary-judgment motion, Defendants cannot

16   be held liable for any constitutional violation. Additionally, Defendants are entitled to qualified

17   immunity, because even if a constitutional violation could be proven, reasonable officials in

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. Summ. J.

*Roberson v. Woodford, et al*
Case No. C 07-3497 CRB (PR)

1 | Defendants' positions could have believed that their conduct in this case comported with the law.

2

3 | Dated:  June 2, 2008

4 | Respectfully submitted,

5 | EDMUND G. BROWN JR.
Attorney General of the State of California

6 | DAVID S. CHANEY
Chief Assistant Attorney General

7 | FRANCES T. GRUNDER
Senior Assistant Attorney General

8

9 | MICHAEL W. JORGENSON
Supervising Deputy Attorney General

10

11

12

13 | CHRISTOPHER M. YOUNG
Deputy Attorney General
Attorneys for Defendants Childers, Gibbs-Battenfeld, Guerra, and
14 | Woodford

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. Summ. J.

*Roberson v. Woodford, et al*
Case No. C 07-3497 CRB (PR)

10

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Roberson v. Woodford, et al**

No.:    **C 07-3497 CRB (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>June 2, 2008</u>, I served the attached

### DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Lennis L. Roberson, D-34017**
**Correctional Training Facility**
**P.O. Box 686**
**Soledad, CA 93960-0686**
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 2, 2008, at San Francisco, California.

| L. Santos | |
|---|---|
| Declarant | Signature |

40260529.wpd