IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENNIS ROBERSON, | ) |
| Plaintiff, | ) No. C 07-3497 CRB (PR) |
| v. | ) ORDER GRANTING |
| JEANNE WOODFORD, et al., | ) DEFENDANTS' MOTION FOR ) SUMMARY JUDGMENT |
| Defendant(s). | ) (Doc # 11) |

I.

Plaintiff, a prisoner at the Correctional Training Facility (CTF) in Soledad, California, filed this civil rights action under 42 U.S.C. § 1983 alleging that prison officials violated his right to free exercise of religion under the First Amendment and Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, when back in 1998-99 they deemed him a "program failure" for wearing a beard in violation of grooming standards and made him ineligible to receive time credits. Plaintiff further alleges that prison officials violated his right to equal protection when, years later, they denied him restoration of time credits afforded to inmates of other faiths. Plaintiff seeks injunctive relief, including restoration of time credits, and damages.

1  Per order filed on November 15, 2007, the court found that plaintiff's allegations, when liberally construed, stated cognizable claims under § 1983 for violation of his right to free exercise of religion under the First Amendment and RLUIPA, and for violation of his right to equal protection, and ordered the United States Marshal to serve the named defendants.

Defendants move for summary judgment under Federal Rule of Civil Procedure 56 on the ground that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law.  Defendants argue that plaintiff's claims for injunctive relief are moot and that there is no genuine issue for trial on plaintiff's claims for damages because plaintiff has set forth no evidence showing that defendants knew that his grooming was based on religious beliefs or that they treated him differently from similarly situated prisoners.  Defendants further argue that plaintiff did not exhaust available administrative remedies as to his claims for damages and that they are entitled to qualified immunity from liability for damages.  Plaintiff has filed an opposition and defendants have filed a reply.

II.

The following facts are undisputed unless otherwise noted:

On September 24, 1998, plaintiff appeared at a Unit Classification Committee at California State Prison, Corcoran (Corcoran) for a classification review.  Among other things, he was advised of the institution's grooming standard.

Two months later, on November 20, 1998, plaintiff was advised by a CDC-128A that he was not in compliance with the grooming standard.  The CDC-128A specifically advised plaintiff that "hair shall not be longer than three inches," "side burns shall be nearly trimmed and cannot exceed one and one-half inches in width," and "[i]nmates must be clean shaven at all times unless medically exempt."  Decl. Young, Ex. E at 29.  The CDC-128A also warned plaintiff that if he did not comply with the grooming standard

2

and shave his beard that day, he would receive a Rules Violation Report.  Plaintiff was also given a deadline of November 23 before he would receive a serious Rules Violation Report and November 26 before he would be subject to a classification review and possible assignment of C-status.  "C-status" is the work group assignment for inmates who are deemed "program failures."  Cal. Code Regs. tit. 15, § 3044 (b)(5).  Inmates assigned C-status do not accumulate any time credit towards early release.  Id.

On November 25, 1998, Plaintiff received a serious Rules Violation Report (RVR) for failure to adhere to grooming standards.

On December 1, 1998 Plaintiff received a second RVR for failure to adhere to grooming standards.

A hearing was held on these two RVRs on December 8.  Plaintiff entered no plea and the hearing officer entered a not guilty plea on plaintiff's behalf.  According to the hearing record, plaintiff declined an opportunity to address the charges and simply stated, "it doesn't matter." Compl. ¶ 17, Exs. A & B.  Plaintiff was found guilty and "confined to quarters" for 5 days.  Id. Ex. B.

On December 6, 1998, plaintiff received a third RVR for failure to adhere to grooming standards.  A hearing was held on December 30 and, again, the hearing record shows that when given the opportunity to address the charge plaintiff simply stated, "I don't care to address that." Id. ¶ 19, Ex. C.  Plaintiff nonetheless claims that he told Senior Hearing Officer S. Grandy that his non-compliance with the grooming standard was based on a religious belief but that he understood that it didn't matter.  According to plaintiff, Grandy then replied, "I understand, but we all have to follow the rules." Decl. Roberson, Ex. A7(b) ¶ 4.

On December 8, 1998, Plaintiff received a fourth RVR for failure to adhere to grooming standards.  Plaintiff later filed an inmate appeal to have this RVR removed

3

from his file because it violated the "stacking rule" in that plaintiff had already been cited for the behavior. The RVR was purged from plaintiff's record.

On January 7, 1999, Plaintiff appeared before the Unit Classification Committee and was assigned to C-status based on his non-compliance with grooming standards. Plaintiff was informed of his appeal rights, but he did not appeal the C-status assignment on any ground, religious or otherwise.

On February 3, 1999, Plaintiff was transferred from Corocoran to CTF. At plaintiff's initial classification hearing at CTF, the committee asked him if he would confirm to the grooming standard and he simply responded, "no." Decl. Young Ex. D at 26. There is nothing in the committee notes indicating that plaintiff told the committee that his grooming was based on religious beliefs.

On August 10, 2005, over six years after his assignment to C-status, plaintiff requested to be removed from C-status by sending a request to Correctional Counselor Carnazzo. Plaintiff requested removal from C-status because "the U.S. Supreme Court decided that RLUIPA's institutionalized person provision in consistent with the First Amendment." Compl. Ex. G. Plaintiff did not state in the request that his grooming was related to his religious beliefs. The request was returned to plaintiff with directions to contact Defendant Gibbs-Battenfeld. Plaintiff sent a copy of the request to Gibbs-Battenfeld on August 12.

Plaintiff was scheduled for a classification review on October 18, 2005, but refused to attend. His custody status was not changed as a result of his refusal to appear.

On October 20, 2005, plaintiff submitted an inmate appeal relating to his unanswered request for an interview and removal from C-status. In the appeal, plaintiff requested removal from C-status because his status as a program failure was due to non-compliance with grooming standards the Supreme Court and Ninth Circuit had now held were illegal under RLUIPA. Gibbs-Battenfeld denied the appeal at the informal level

4

noting that plaintiff was placed on C-status for failure to comply with grooming standards in 1999 and that he still was not in compliance with grooming standards.

On February 1, 2006, plaintiff filed an "emergency appeal" on behalf of himself and fellow inmate McCall.  The appeal included proposed regulations changing inmate grooming standards, a letter from the Attorney General's Office addressed to another inmate and proof that McCall violated grooming standards based on religious beliefs.  Plaintiff did not attach any proof that his violations of grooming standards were based on his religious beliefs.

On January 17, 2006, the California Department of Corrections and Rehabilitation (CDCR) adopted emergency regulations related to grooming.  The new regulations were in response to RLUIPA, which had been enacted on September 22, 2000 but had only recently (May 31, 2005) been upheld by the Supreme Court in Cutter v. Wilkinson, 544 U.S. 709 (2005).  The emergency regulations allowed inmates to have any length of hair as long as it did not cover the inmate's face or pose a health/safety risk.   Cal. Code Regs. tit. 15, § 3062(e).  They also allowed inmates to wear short beards.  Id. § 3062 (h).

On February 27, 2006, CDCR Director Dovey issued a memo relating to the emergency regulations.  First, it ordered that any grooming standard RVR written after January 17, 2006 would be voided upon written request by the inmate, as long as the inmate's appearance complied with the revised grooming standard described in the emergency regulation.  Second, any inmate deemed a program failure due to grooming violations would be removed from program failure status effective January 17, 2006.  Third, any inmate who had been found guilty of an RVR based on grooming standards and who violated grooming standards "based on previously stated religious beliefs" would receive full restoration of time credits lost for violations occurring on or after September 22, 2000, the day RLUIPA was enacted.  Decl. Young Ex. G.  To receive time credit restoration, the inmate had to prove that non-compliance was based on religious beliefs.

5

1  This proof could be in the form of documented statements at a disciplinary hearing,
2  investigative employee reports, inmate appeals, classification chronologicals, other
3  documents in the inmate's central file, or any other verifiable document.  Inmates who
4  could not verify that non-compliance was based on religious beliefs were not entitled to
5  have their credit restored.
6       On February 15, 2006, plaintiff appeared before the Unit Classification Committee
7  and was removed from C-status effective January 17, 2006.  The committee found no
8  proof that plaintiff was assigned to C-status for exercising his religious beliefs (other than
9  plaintiff's own statements at the hearing), but, pursuant to the new policy, granted him
10 credit for the January 17, 2006 to February 15, 2006 time period he remained in C-status.
11 Plaintiff was also assigned to work group A-2, privilege group B, and placed on waiting
12 lists for a work assignment.
13      On March 7, 2006, plaintiff appealed the February 15 decision.  Plaintiff requested
14 credit for the January 1999 to January 2006 time period he was in C-status.  The appeal
15 was denied at the Director's Level of Review because, according to policy, time credit
16 restoration could only be extended to inmates who received grooming violations on or
17 after September 22, 2000 and plaintiff's violations dated back to 1998.

                                          III.

19      Summary judgment is proper where the pleadings, discovery and affidavits show
20 that there is "no genuine issue as to any material fact and [that] the moving party is
21 entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those
22 which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S.
23 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence
24 for a reasonable jury to return a verdict for the nonmoving party.  Id.
25      The party moving for summary judgment bears the initial burden of identifying
26 those portions of the pleadings, discovery and affidavits which demonstrate the absence

1  of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
2  Once the moving party meets its initial burden, the nonmoving party must go beyond the
3  pleadings and, by its own affidavits o discovery, "set forth specific facts showing that
4  there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  If the nonmoving party fails to
5  make this showing, "the moving party is entitled to judgment as a matter of law." Celotex
6  Corp., 477 U.S. at 323.  If the evidence in opposition to the motion is merely colorable, or
7  is not significantly probative, summary judgment may be granted. See Anderson, 477
8  U.S. at 249-50.

### IV.

10  Defendants claim that they are entitled to summary judgment because plaintiff's
11 claims for injunctive relief are moot and because plaintiff has set forth no evidence
12 showing a genuine issue for trial on his claims for damages.  Defendants further argue
13 that plaintiff did not exhaust available administrative remedies as to his claims for
14 damages and that they are entitled to qualified immunity from liability for damages.

### A.

16  Plaintiff seeks an injunction "to afford [him] the rights to which he is entitled to
17 under the Constitution." Compl. ¶ 27.  Specifically, he seeks a permanent injunction to
18 prevent future prison disciplinary action for wearing a beard for religious reasons. Pl's
19 Opp. to Def.'s Mot. for Summ. J. at 5.

20  "The requirements for the issuance of a permanent injunction are the likelihood of
21 substantial and immediate irreparable injury and the inadequacy of remedies at law."
22 Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1495 (9th Cir. 1996).   In
23 addition to showing that prison officials violated federal law, plaintiff must show an
24 intentional and pervasive pattern of misconduct. Id. at 1500.  He must show that there is
25 a great and immediate threat that he will suffer future irreparable injury for which there is
26 no adequate remedy at law. Nava v. City of Dublin, 121 F.3d 453, 458 (9th Cir. 1997).

1  Past injury to plaintiff generally is insufficient to satisfy this requirement, as is a threat of
2  future injury to other citizens, rather than to plaintiff himself.  See id. at 459.
3       Plaintiff is not entitled to prospective injunctive relief because he has not shown
4  that there is a great and immediate threat that he will suffer future irreparable injury for
5  which there is no adequate remedy at law.  See id. at 458.  In fact, plaintiff's claim for an
6  order enjoining defendants from disciplining him for wearing a beard was effectively
7  rendered moot by CDCR's revised grooming standard.  In early 2006, CDCR revised its
8  grooming standard regulation in light of RLUIPA.  See Cal. Code Regs. tit. 15, § 3062.
9  Inmates may now wear their hair any length and/or wear short beards.  See id.
10      Shortly after the revised grooming standard regulation went into effect in early
11 2006, plaintiff was removed from C-status and assigned to work group A-2, privilege
12 group B, where he started earning time credits again.  There is no evidence that he has
13 been disciplined for wearing a beard for religious reasons since or that he is likely to be
14 disciplined in the future.  Plaintiff's claim for a permanent injunction is moot because
15 there is no longer an "actual, ongoing dispute" regarding his wearing a beard for religious
16 reasons.  Ruiz v. City of Santa Maria, 160 F.3d 543, 548-49 (9th Cir. 1998).
17      Plaintiff's claim for restoration of time credits for the more than seven years he was
18 on C-status is not moot.  But the claim must be dismissed without prejudice to bringing it
19 in a petition for a writ of habeas corpus under 28 U.S.C. § 2254 after exhausting state
20 judicial remedies.  See Calderon v. Ashmus, 523 U.S. 740, 747 (1998); Edwards v.
21 Balisok, 520 U.S. 641, 648 (1997); Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).  A
22 claim for restoration of time credits that affects the duration of a prisoner's custody, and a
23 determination of which may likely result in entitlement to an earlier release, as is the case
24 here, must be brought in habeas after exhausting state judicial remedies.  See Butterfield
25 v. Bail, 120 F.3d 1023, 1024 (9th Cir. 1997); Bostic v. Carlson, 884 F.2d 1267, 1269 (9th
26 Cir. 1989); see also Ramirez v. Galaza, 334 F.3d 850, 858-59 (9th Cir. 2003) (implying
27
28      8

1  that claim, which if successful would "necessarily" or "likely" accelerate prisoner's

2  release on parole, must be brought in habeas).[1]

### B.

Plaintiff seeks damages for violation of his right to free exercise of religion under the First Amendment and RLUIPA, and for violation of his right to equal protection under the Fourteenth Amendment. He alleges that back in 1998-99 he was deemed a program failure for wearing a beard for religious reasons and found ineligible to receive time credits. He further alleges that, years later, when CDCR changed its grooming standard, he was denied restoration of time credits afforded to inmates of other faiths.

### 1.

The First Amendment guarantees the right to the free exercise of religion. Cruz v. Beto, 405 U.S. 319, 323 (1972). "The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." O'Lone v. Shabazz, 482 U.S. 342, 348 (1987). Even if a prison regulation impinges on an inmate's exercise of religion, no First Amendment violation will be found if the regulation is reasonably related to legitimate penological goals. Id. at 349 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).

In order to establish a free exercise violation, a prisoner must show that a

---

[1] To whatever extent plaintiff also seeks damages for unconstitutional deprivation of time credits, the claim must be dismissed without prejudice because a judgment in his favor would necessarily imply the invalidity of his continued confinement and said confinement has not yet been invalidated. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) (claim for damages implicating invalidity of state conviction or sentence that has not been invalidated is not cognizable under § 1983); Sheldon v. Hundley, 83 F.3d 231, 233 (8th Cir. 1996) (Heck bars claim for damages for improper deprivation of time credits because such claim necessarily calls into question the lawfulness of the plaintiff's continuing confinement, i.e., it implicates the duration of the plaintiff's sentence). Plaintiff must have the deprivation of time credits and resulting impact on the length of his sentence invalidated before he can proceed with a claim for damages for the wrongful actions he claims caused his unlawful, longer sentence.

1  defendant burdened the practice of his religion without any justification reasonably
2  related to legitimate penological interests. Freeman v. Arpaio, 125 F.3d 732, 736 (9th
3  Cir. 1997). A prisoner is not required to objectively show that a central tenet of his faith
4  is burdened by a prison regulation to raise a viable claim under the Free Exercise Clause.
5  Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008). Rather, the sincerity test of whether
6  the prisoner's belief is "sincerely held" and "rooted in religious belief" determines
7  whether the Free Exercise Clause applies. Id.
8       RLUIPA provides that no state may impose a "substantial burden" on a prisoner's
9  exercise of religion unless the action or policy in question provides the least restrictive
10 means of serving a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). In order
11 to state a claim under RLUIPA, a prisoner bears the burden of coming forward with
12 evidence demonstrating the state's action or policy constituted a substantial burden on his
13 exercise of religion. Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005). The
14 focus of this initial inquiry necessarily is on the manner in which the plaintiff's religious
15 exercise is impacted, rather than on the reasonableness of the facility's policy or
16 regulation. Id. at 995.
17      Plaintiff's claims for damages for violation of his right to free exercise of religion
18 fail on summary judgment because he has not set forth any evidence showing that any of
19 the defendants actually and proximately caused the deprivation of a federally protected
20 right. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) (to survive summary
21 judgment on claim for damages, plaintiff must set forth specific facts showing how each
22 and every defendant actually and proximately caused the deprivation of a federally
23 protected right). Plaintiff has not set forth any evidence showing that any of the
24 defendants knew that requiring plaintiff to shave his beard would put substantial pressure
25 on plaintiff to modify his behavior and violate his religious belief. See Warsoldier, 418
26 F.3d at 995 (citing Thomas v. Review Bd. of the Ind. Employment Sec. Div., 450 U.S.
27
28                                    10

707, 717-18 (1981)).  In Warsoldier, and more recently Shakur, the prisoners made the defendants aware of their religious convictions and of how enforcement of institutional policy was infringing on their religious beliefs.  See Shakur, 514 F.3d at 882; Warsoldier, 418 F.3d at 992.  But here, plaintiff has not set forth any evidence showing that defendants knew that enforcement of the grooming standard was infringing on his religious beliefs.

Plaintiff submits a declaration in which he states that, back in 1998, he told Corcoran correctional officer Rangel and senior hearing officer Grandy that his non-compliance with the grooming standard was based on his religious beliefs as a practicing Muslim.  But neither Rangel nor Grandy was named as a defendant in this action.  Plaintiff also declares that he told "correctional staff" that his non-compliance was due to his religious beliefs.  But he gives no specific facts as to who he told or when he told them.  Such conclusory allegations are not enough to survive summary judgment.  See Leer, 844 F.2d at 633 (conclusory allegations insufficient to defeat summary judgment).

Plaintiff does declare that he told one defendant, Gibbs-Battenfeld, that his non-compliance was based on his religious beliefs.  See Decl. Roberson Ex. A7(d).  But he did not do so until August 12, 2005, id., more than five years after he was deemed a program failure for not complying with the grooming standard and during which period he did not once appeal his placement on C-status on religious grounds.   Under these circumstances, it would not have been unreasonable for Gibbs-Battenfeld to discredit plaintiff's assertion of non-compliance based on religious beliefs.  Cf. Saucier v. Katz, 533 U.S. 194, 205 (2001) (officer entitled to qualified immunity from damages where he reasonably, but mistakenly, believed that a suspect was likely to fight back and uses more force than needed).  Furthermore, the undisputed evidence in the record shows that a couple of months after plaintiff allegedly told Gibbs-Battenfeld that his non-compliance was based on his religious beliefs, a classification hearing was scheduled, but plaintiff refused to

attend. And a couple of months after that, the grooming standard was revised and plaintiff's restrictions were removed. On this record, no reasonable trier of fact could find that Gibbs-Battenfeld actually and proximately caused the deprivation of plaintiff's right to free exercise of religion. See Leer, 844 F.2d at 634.[2]

2.

The Equal Protection Clause requires the state to treat all similarly situated people equally. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). It also ensures that prison officials cannot discriminate against particular religions. Cruz v. Beto, 405 U.S. 319, 321-22 (1972).

To establish that defendants violated his right to equal protection by denying him restoration of time credits afforded to inmates of other faiths, plaintiff must show that defendants intentionally discriminated against him based on his religion. See Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). And under Turner v. Safley, 482 U.S. 78 (1987), plaintiff "can not succeed if the difference between the defendants' treatment of him and their treatment of [other] inmates is reasonably related to legitimate penological interests." Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008) (citation and internal quotation marks omitted).

In support of his claim, plaintiff submits four declarations from prisoners who received restoration of time credits after CDCR revised its grooming standard regulation and provided that any inmate who violated grooming standards based on previously stated religious beliefs would receive full restoration of time credits lost for violations occurring on or after September 22, 2000, the day RLUIPA was enacted. Unfortunately for

---

[2]In addition, plaintiff is not entitled to proceed with a free exercise damages claim based on his placement on C-status for non-compliance with the grooming standard because he did not exhaust available administrative remedies in connection with said claim on religious grounds (or any other grounds). See 42 U.S.C. § 1997e(a). And although he may have exhausted a free exercise claim based on denial of restoration of time credits, said claim is barred under the rationale of Heck. See supra at 9 n.1.

12

plaintiff, none of the declarations create a genuine issue for trial on his claim that he was discriminated against based on his religion.

Inmate Williams' declaration simply states, "I (E.Wayne Williams) was on C-status and was granted retroactive time credits which were denied to plaintiff." William Decl. Ex. A ¶ 10. Williams does not state whether his grooming violation occurred before or after September 22, 2000, how he verified to prison officials that his violation was based on religious convictions or whether he is of a different faith than plaintiff. Williams' conclusory allegation is not enough to show a genuine issue for trial on plaintiff's claim that he was discriminated against based on his religion. See Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

Inmate Brown's declaration similarly states that he was granted retroactive time credits without giving any details about when his grooming violation occurred, how he verified that his violation was based on religious conviction or whether he is of a different faith than plaintiff. See Decl. Brown ¶¶ 11-12. An inmate appeal attached to the declaration does not provide any further specifics. See id. Ex. A. Brown's declaration and exhibit are not enough to show a genuine issue for trial on plaintiff's claim that he was discriminated against based on his religion. See Leer, 844 F.2d at 633.

Inmate Shotwell's declaration states that he was granted retroactive time credits and that he is "of a different religio[n] that the plaintiff." Decl. Shotwell ¶¶ 14-15. But the classification review report attached to the declaration makes clear that Shotwell verified that his grooming violation was based on previously stated religious beliefs by submitting a copy of a prior inmate appeal to the classification review board. See id. Ex. A. By contrast, plaintiff did not provide any proof that his grooming violations were based on his previous stated religious beliefs. Shotwell's declaration and exhibit are not enough to show a genuine issue for trial on plaintiff's claim that he was discriminated against based on his religion. After all, plaintiff and Shotwell were not similarly situated.

13

1    Inmate Alto's declaration does not compel a different result.  Alto also declares
2 that he was granted retroactive time credits and that he is "of a different religious faith
3 that plaintiff."  Decl. Alto ¶¶ 15-16.  But he sets forth no specific facts in his declaration
4 or attached exhibit showing how he verified that his grooming violation was based on
5 religious beliefs.  He does not show that he was similarly situated to plaintiff because,
6 like plaintiff, he only provided his word as proof that his grooming violation was based
7 on religious beliefs.
8    Defendants are entitled to summary judgment on plaintiff's claim for damages for
9 violation of his right to equal protection.  Plaintiff has not set forth any evidence showing
10 that he was similarly situated to other inmates, yet denied the same benefits.  There is no
11 genuine issue for trial on plaintiff's claim that he was discriminated against based on his
12 religion.  See Fed. R. Civ. P. 56(e).[3]

V.

14    For the foregoing reasons, defendants' motion for summary judgment (doc # 11) is
15 GRANTED.  The clerk is instructed to enter judgment in accordance with this order and
16 close the file.
17 SO ORDERED.
18 DATED: August 18, 2008                          _____
                                                  CHARLES R. BREYER
19                                                United States District Judge

20 G:\PRO-SE\CRB\CR.07\Roberson, L1.msj.wpd

---

[3]At minimum, defendants are entitled to qualified immunity from damages liability because reasonable officers could have believed that their conduct (i.e., denying plaintiff restoration of time credits pursuant to CDCR new policy) was lawful under the circumstances.  See Marquez v. Gutierrez, 322 F.3d 689, 692-93 (9th Cir. 2003) (clarifying that officers' claims of qualified immunity are not defeated simply because a triable issue of fact exists as to whether their decision to use force was malicious).  And, as previously noted, any claim for actual restoration of time credits must be brought in habeas after exhausting state judicial remedies.  See supra at 8-9 & n.1.

14